**In re RALEIGH/SPRING FOREST APARTMENTS ASSOCIATES, a North Carolina Limited Partnership, Debtor.**

**Bankruptcy No. 90–01037–ATS.**

United States Bankruptcy Court, E.D. North Carolina.

Aug. 28, 1990.

Sally A. Conti, R. Wilson Freyermuth, Raleigh, N.C., for debtor.

Margaret C. Lumsden, Raleigh, N.C., Clifton R. Jessup, Jr., Dallas, Tex., for Connecticut General.

Thomas B. Henson, Charlotte, N.C., for Travelers.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matters before the court are requests from the chapter 11 debtor in possession's two primary secured creditors, Travelers Insurance Company and Connecticut General Life Insurance Company, for adequate protection and for sequestration of rents and profits arising from the debtor's apartment project. The facts are undisputed and raise some basic issues concerning the validity and enforceability of rent assignments in postpetition rents. A hearing was held in Raleigh, North Carolina, on August 15, 1990.

Raleigh/Spring Forest Apartments Associates, a North Carolina limited partnership, which owns a 404–unit apartment project in Raleigh, North Carolina, filed a chapter 11 petition on March 30, 1990. Since that time it has operated as a debtor in possession. 11 U.S.C. § 1101(1).

The apartment project consists of three phases. Travelers has a valid first lien of approximately $2,700,000 on Phases I and II. Phase III is subject to a first lien of approximately $3,500,000 in favor of Connecticut General. Superior Bank has a second lien of approximately $1,000,000 on all three phases.

In addition to having properly recorded deeds of trust,[1] both Travelers and Connecticut General have properly recorded assignments of rents.[2]

The rent assignments provide that the debtor shall be entitled to the rents until there is a default. In the event of default, the assignments give each lender the right "at its option" to take possession of the property and collect the rents. Additionally, the assignments permit the lenders, upon default, to collect the rents *without taking possession.*[3]

---

1. Although the liens are in the form of deeds of trust, the court will from time to time refer to the security interest as a "mortgage," to the lienholders as "mortgagees," and to the debtor as "mortgagor."

2. Travelers' rent assignment is entitled "Assignment of Leases, Rents and Profits;" Connecticut General's rent assignment is called "Assignment of Lessor's Interest in Leases, Rents and Security Deposits." Travelers' and Connecticut General's deeds of trust contain rent assignment clauses, but those clauses are not the primary source of the claims to the rental proceeds. Travelers' deed of trust at ¶ 10; Connecticut General's deed of trust at ¶ 13.

3. Travelers' assignment in paragraph 3 provides "after default in payment ... Assignee may declare all sums secured hereby immediately due and payable and may, at its option ... without bringing any action or proceeding, or by a receiver to be appointed by a court, enter upon, take possession of, manage and operate the leased premises ... and either with or without taking possession of said property, in its own name sue or otherwise collect and receive such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection ... upon any indebtedness secured hereby...."

The assignment further provides that the "... Assignee will not be required to take possession of the property in order to exercise its rights hereunder." Additionally paragraph 3 states "[i]t is understood and agreed that prior to default entitling Assignee to accelerate the indebtedness secured hereby, Assignor shall be entitled to collect rents and other amounts payable under the leases assigned herein subject to the terms of the Note and the Deed of Trust and Security Agreement evidencing and securing the loan secured hereby."

Connecticut General's assignment in paragraph C.1. states "[s]o long as there shall exist no default by the Assignor in payment of any indebtedness secured hereby, including the interest thereon, or in the performance of any obligation, covenant or agreement herein or in the Loan Documents or in any of the Leases contained, the Assignor shall have the right to collect upon, but not prior to accrual, all rents, income and security deposits from the Property and to retain, use and enjoy the same." Paragraph C.2. provides that "at any time after default" Connecticut General "may at its option take possession of the Property" and "may collect and receive all rents, income and security deposits of the Property, with or without taking possession of the Property." Connecticut General is given the right to apply the rents in

At the time of the debtor's bankruptcy, the indebtedness to Travelers and to Connecticut General was not in default, the debtor was in possession of the apartments and the debtor was collecting the rents.

Since the filing of the chapter 11 petition the debtor has remained in possession of its property and has continued to collect and use the rents.

On June 7, 1990, Travelers filed a motion requesting (1) relief from the automatic stay, (2) adequate protection, and (3) segregation and sequestration of rents. On June 28, 1990, Connecticut General filed (1) a motion for sequestration of rents, (2) a notice of perfection of security interest under § 546(b), and (3) a request for adequate protection.

Travelers concedes that its lien is adequately protected by an equity cushion and is not pursuing its motion to lift the stay.[4] The only issues before the court relate to the secured creditors' entitlement to rents and adequate protection.

## DISCUSSION AND CONCLUSIONS

*Do the Holders of Assignments of Rents Have a Valid Security Interest in the Rents Generated from the Apartments?*

The first inquiry is the validity of Travelers' and Connecticut General's security interests in the rents which arise from the debtor's apartment project. The validity of these liens depends upon whether they are valid under state law. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Saline State Bank v. Mahloch,* 834 F.2d 690 (8th Cir.1987); 11 U.S.C. § 552(b).

There are no North Carolina cases construing the validity of rent assignments, but there is no reason to believe that rent assignments are invalid. *See* Rep. of Comm. on R. Est. Financing, Real Prop. Div., "Disposition of Rents After Mortgage Default," 16 R. Prop., Prob. & Tr. J. 835 (1981).

*What is the Nature of the Lien Created by an Assignment of Rents in North Carolina?*

■ While there are no North Carolina cases which discuss the scope of the security interest created by rent assignments, the law with respect to a mortgagee's general entitlement to rents is clear. In North Carolina, a mortgagor is entitled to the rents arising from the real estate until the mortgagee takes possession of the property or until a receiver is appointed. P. Hetrick & J. McLaughlin, *Webster's Real Estate Law in North Carolina* § 263, at 314-15 (3rd ed. 1988).

■ The parties to a mortgage, however, may specify by contract that the mortgagee rather than the mortgagor shall be entitled to the rents. Where the assignment is security for the underlying indebtedness and the agreement is that the mortgagor is entitled to have the rents until default, the assignment, however, is not absolute; it is conditional. The mortgagee's right to the rents is not complete, even upon default, until the mortgagee takes some affirmative action to enforce the collection of rents. For example, the mortgagee may have a receiver appointed or may take physical possession of the property. In the Travelers and Connecticut General assignments each assignee may "at its option" collect the rents without having a receiver appointed or without taking possession, but the affirmative step of assuming control of the rents is required. Until that step to enforce the rent assignment is taken, the mortgagor, not the mortgagee, is entitled to the rents. That result makes sound business sense. The consequences to a lender of taking control of its collateral or of assuming dominion and control of its borrower's rents are not insignificant. A mortgagee who takes possession of property or who seizes the rents takes on a num-

---

payment of various operating costs, repairs, taxes, and the indebtedness.

**4.** Travelers acknowledges that for purposes of this hearing the value of the property is $10,-000,000. Connecticut General stipulated that the debtor has received an offer to purchase the apartments for that amount.

ber of duties. Secured lenders do not always want automatically to assume those responsibilities and the potential liability that may follow every time a mortgage goes into default. Accordingly, the entitlement to rents is "at the option" of the lender and is not automatic.

In the present case, at the time of bankruptcy neither Travelers nor Connecticut General had taken any steps to enforce its lien and neither was entitled to the rents. After the petition was filed, the secured creditors were prohibited by the automatic stay from enforcing those rights.

### Are the Assignments of Rents Properly Perfected?

 The debtor argues that, since Travelers and Connecticut General had not sought to enforce their assignments of rents prior to bankruptcy, their liens were unperfected. The court disagrees.

In North Carolina rent assignments must be recorded to be perfected. N.C.GEN. STAT. §§ 47–18 & 47–20. *First & Citizens National Bank of Elizabeth City, N.C. v. Sawyer,* 218 N.C. 142, 10 S.E.2d 656 (1940). In the present case, both assignments of rent were properly recorded prior to bankruptcy.

It is true that the assignees had not taken the necessary steps to enforce the assignments and were not entitled to the rents, but they still had a conditional right to the rents and that right was properly perfected. *See* J. McCafferty, "The Assignment of Rents in the Crucible of Bankruptcy," 94 Com.Law J. 433, 448 & 456 (1989) (arguing that the definition of "lien" in 11 U.S.C. § 101(33) is broad enough to include "inchoate liens," and that the conditional lien, though not immediately enforceable, continues after the commencement of the case).

### Are the Rents which are Subject to a Perfected, But Unenforceable, Assignment "Cash Collateral" under § 363(a)?

Cash collateral is defined in 11 U.S.C. § 363(a) as

... cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

The designation of assets as cash collateral is important because § 363(c)(2) prohibits a trustee or debtor in possession from using cash collateral unless the entity that has the interest in the cash collateral consents or authorization is given by the court after notice and a hearing.

 An argument can be made that the rents subject to rent assignments are "cash collateral" as defined in § 363(a) because the rents are cash "in which the estate and an entity other than the estate have an interest." *See* J. McCafferty at 457. Where the assignee has not taken the necessary steps to enforce the assignment, however, the assignee is not entitled to the rents. The assignee's unenforceable interest in rents is too remote to qualify as cash collateral. A creditor who had no right to the rents prepetition should not automatically have that right merely because a bankruptcy petition has been filed. The assignee must take those affirmative actions before the lien is enforceable. *Butner,* 99 S.Ct. at 918. The stay prohibits the assignee from taking those actions, but the assignee is not without a remedy.

### How May the Rent Assignee Enforce its Assignment With Respect to Postpetition Rents?

Bankruptcy Code § 362(a)(4) prohibits all entities from enforcing any lien against property of the estate. As long as enforcement is delayed, so is the creditor's entitlement to the rents. This predicament for assignees was recognized by the court in *Butner,* which stated that "the federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankrupt-

cy court the same protection he would have under state law if no bankruptcy had ensued." 440 U.S. at 56, 99 S.Ct. at 918. What this means is that the assignee may ask the bankruptcy court to authorize those actions necessary to enforce the assignment and thereby complete the assignee's entitlement to the rents.

■ In determining whether to grant the request of a rent assignee to enforce the assignment, the court must consider whether the relief requested would be granted under state law, whether the secured creditor's interest is being adequately protected (§ 361), and the equities of the case (§ 552(b)).

The court could give possession of the property to the secured creditor or the court could allow the debtor to remain in possession but allow the secured creditor to collect the rents. The latter alternative, however, would be impractical in most cases and the better course of action where the debtor remains in possession would be to have the debtor in possession collect the rents for the benefit of the assignee much as a receiver would do under state law.

### May the Assignee Enforce the Assignment of Rents by Giving Notice Under § 546(b)?

Connecticut General contends that the assignee may enforce its rent assignment by constructively seizing the property simply through giving notice to the debtor in possession under § 546(b). Section 546(b) provides that if seizure of the property is necessary to the "perfection" of an interest in property, the seizure could be accomplished postpetition by giving notice. The problem with that position is that § 546(b) relates to the "perfection" of the security interest, not the enforcement of that interest. A properly filed rent assignment may be perfected even though it is not enforceable. Seizure is not necessary for the "perfection" of the rent assignment and § 546(b) is simply not applicable. *See* J. McCafferty at 464. *But see, Virginia Beach Federal Sav. and Loan Ass'n v. Wood,* 901 F.2d 849 (10th Cir.1990).

### What Relief is Appropriate in the Case?

■ In this case the rights of Travelers and Connecticut General appear to be adequately protected by the value of the real property, the apartment project, which secures their claims. The rents are needed by the debtor to maintain the apartment project and its value, but the debtor has only one asset and the rent proceeds, beyond what is necessary to maintain the project and meet administrative expenses, are not needed by the debtor. Consequently, the excess should be held for the benefit of Travelers and Connecticut General.

If the secured creditors were given possession of the project or if a receiver were appointed under state law, the rents would first be used to pay the costs and expenses necessary to maintain the property. Accordingly, the rents shall be sequestered for the benefit of Travelers and Connecticut General, but the debtor in possession shall be entitled to use the rents to maintain its apartment project and to pay reasonable administrative expenses. The *net* proceeds shall be held for the benefit of Travelers and Connecticut General and the sequestration shall be effective from August 15, 1990, the date the court announced its ruling in open court.

The parties are urged to agree on a budget to determine what expenses may be paid from the rental proceeds. If an agreement cannot be reached, the court will make that determination.

SO ORDERED.