**In re BRANDON ASSOCIATES, Debtor.**

**Bankruptcy No. 7–91–00612.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

June 24, 1991.

Thomas W. Kennedy, Assistant U.S. Trustee, Roanoke, Va.

Jonna M. McGraw, Roanoke, Va., for debtor.

Richard E.B. Foster, Roanoke, Va., for William Price.

George I. Vogel, II, Roanoke, Va., for CorEast.

## MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

The matter for decision before the court is whether the post-petition rents generated from operation of the apartment complex owned and operated by the debtor are cash collateral within the meaning of 11 U.S.C. § 363(a). If the rents are cash collateral, their use by the debtor requires the consent of the secured creditors or court authorization upon a finding that the creditors are adequately protected.

### Facts

On August 1, 1978, William H. Price, Jr. (hereinafter "Price") and his wife executed a deed of trust on the Brandon Ridge Apartments complex (hereinafter "the property") to secure a note of the same date in the principal amount of $1,115,-361.73 payable to First Federal Savings & Loan Association of Roanoke. CorEast Exhibits 1 and 2. First Federal was the predecessor of CorEast Savings Bank, which is now under the conservatorship of the Resolution Trust Corporation and will be referred to in this opinion as CorEast. The deed was properly recorded to perfect the interest of the lender. The CorEast note, which by its terms was subject and subordinate to a previous note has a maturity date of July 1, 1998. The CorEast deed of trust contains a rent assignment provision which states as follows:

> E. And *to further secure the payment of Note* and assure the performance and observance of all the covenants, conditions and obligations hereof, *Grantor hereby assigns, transfers and sets over unto the said Trustee all of the*

*rents* that may from time to time become due and payable on account of any and under all leases now existing, or that may herafter come into existence in respect to the above-described real estate or any part thereof, and the said *Trustee is hereby fully authorized and empowered in its discretion (in addition to all other powers and rights herein granted) to apply for and collect and receive all such rents*; and *all money so received* under and by virtue of this assignment *shall be held and applied as further security* for the payment of the indebtedness and obligation hereby secured after first deducting therefrom such reasonable costs and expenses as may be incurred in and about the collection of said rents; *provided, however, that this assignment of rents shall not be or become operative unless and until there shall be default* in the payment of Note, or failure by Grantor to comply with some covenant, obligation or requirement hereof (emphasis added).

CorEast Exhibit 2. CorEast cites the foregoing provision in support of its entitlement to the rents as cash collateral.

On October 27, 1980, Price sold the property to Brandon Associates, the debtor in this case (hereinafter "Brandon" or "debtor"). In consideration for the purchase of the property, Brandon executed a deed of trust to Price (hereinafter the Price deed of trust) to secure payment of two notes payable to Price in the principal amounts of $1,500,000.00 and $300,000.00, respectively (herein the Price Notes). The Price deed of trust is subordinate to the lien of the CorEast deed of trust. The lien of the Price deed of trust is properly perfected.

The Price deed of trust specifically states that it is subject and subordinate to the CorEast lien and that Price will make payments under the CorEast note when the debtor makes payments to Price. The Price deed of trust also provides that, "Grantor agrees to comply with all the terms, provisions and conditions of the deeds of trust as set forth in paragraph 7 hereinabove (referring to the CorEast deed of trust) other than those applicable to payments under said deeds of trust...."

The Price deed of trust contains provisions dealing with the assignment of rents to Price, which state as follows:

GRANTOR DOES COVENANT AND AGREE:

2. The *rents,* income and profits of all and every part of the premises are hereby specifically *pledged* to the payment of the debt and other obligations hereby secured.

19. The *Grantor hereby assigns unto the trustees,* or their successors, *the rents* accrued and to accrue from all tenants in occupancy of the above described premises ... during the lifetime of this deed of trust, *it being understood that as long as there is no default* in the performance or observance of any of the covenants or agreements herein contained, the *Grantor shall have the privilege of collecting and receiving all rents* accruing under leases or contracts of tenancy for the above described premises or any part thereof (emphasis added). [Price Exhibit 7]

It is these provisions which Price cites in support of his entitlement to the rents as cash collateral.

The Price notes became due on October 10, 1990, and Brandon defaulted. At the time of Brandon's default Price ceased making payments to CorEast. By letter dated March 2, 1991, and addressed to Brandon Associates in care of its general partners, the trustee under the CorEast deed of trust stated

[H]e is effective this date *exercising the right under said deed of trust on behalf of the Beneficiary to apply for and receive all rents* from said property ... You have previously been notified of the default under the said deed of trust and the note secured thereby.

All rents now held by you or your agents and all rents accruing and received by you or your agents in the future should, after payment of the reasonable and ordinary expenses of operating and maintaining the property be submitted to the undersigned Substitute

Trustee. (Emphasis added.) [CorEast Exhibit 3]

On March 5, 1991, the debtor filed its petition under Chapter 11.

On motion of the debtor for use of cash collateral, a preliminary hearing was held, at which time joint stipulations were submitted by the debtor, CorEast and Price. A preliminary cash collateral order was entered on March 12, 1991, which provides that CorEast, Price or the debtor may at any time, upon ten days notice to the other two parties, move for modification or termination of the order. The order incorporated the projected budget submitted by the debtor. A final cash collateral hearing was set for April 9, 1991.

Prior to the final hearing, the debtor moved to terminate the cash collateral order and Price moved to modify same. By agreement of the parties, the hearing was continued to April 23, 1991, and both motions were argued by counsel on that date. After argument, the court directed that briefs be filed in support of each party's position.

### Law

■ The definition of cash collateral is contained in 11 U.S.C. § 363(a):

(a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title ...

The issue of assignment of rents as cash collateral was addressed by this court in the case *In re Townside Partners, Ltd.*, 125 B.R. 8 (Bankr.W.D.Va., 1991). The holding of *Townside* is that "[A]bsent contractual provisions, Virginia law requires that the mortgagee be in possession of property subject to the mortgagee's lien before the mortgagee can collect rental income." However, as *Townside* recognizes, Code of Virginia § 55–59, which both the CorEast and Price deeds specifically

incorporate, provides that, "Every deed of trust ... is in the nature of a contract and shall be construed according to its terms...." Therefore, if a deed of trust contains provisions for the assignment of rent, those provisions control the rights of the parties. In the *Townside* case, the language of the deed of trust was very specific, providing that "[T]he Grantor Specifically hereby presently and irrevocably assigns ... all rents.... The assignment of rents shall be effective immediately upon the execution of this Deed of Trust and is not conditioned upon the occurrence of any default hereunder or any other contingency or event.... Beneficiary hereby appoints the Grantor as its sole and exclusive agent to receive and receipt for all monies...." The court held that when read together, all of the above provisions indicated the parties' intent to absolutely assign the rents without any further action by the creditor. Since the debtor was merely acting as an agent of the creditor to collect the rents at the time of the petition, the rents were held to be cash collateral in which the creditor had an interest. 125 B.R. at 10–11.

In the present case, the language of the Price deed of trust is not the absolute language found in Townside. Therefore, the holding in Townside does not apply. The assignment of rents clause in the Price deed of trust indicates that the parties intended to follow Virginia case law in defining the secured creditors' right to rents.

■ The law in Virginia pertaining to enforcement of an assignment of rents is that a mortgagor is entitled to the rents until the mortgagee either takes possession of the premises or obtains the appointment of a receiver. *Frayser's Administrator v. R. & A.R.R. Co.*, 81 Va. 388, 391 (Va.1866). Price was not in a position to enforce his lien prepetition since he had neither possession nor a receiver. However, while Price may not be entitled to receive rents under Virginia law, his recordation of the deed of trust gave him an interest in them. That interest is perfected as to the debtor and third parties and unenforceable as to the

debtor due to the automatic stay under section 362 once the petition is filed.

■ The CorEast assignment differs from the Price assignment by providing that after default the trustee may "apply for" the rents whether in possession or not. Because the CorEast trustee sent notice to the debtor of his "application for" the rents, the question arises as to whether CorEast's lien is both perfected and enforceable as to the debtor.

The specific language of the CorEast assignment provides that the trustee "is fully authorized and empowered ... to apply for and collect and receive all such rents...." However, the term "apply for" is not defined in the deed of trust. The trustee did send notice to the debtor and indicate an intention to "make application" for the rents in the letter of March 2, 1991. The question is what the parties intended by the deed of trust language "apply for."

There are two possible interpretations of the "apply for" language. One is that the parties intended that upon default the creditor would "apply for" the rents to the debtor. This interpretation strains logic and the ordinary course of business dealings between lender and borrower. In short, the court cannot envision a lender "applying to" the debtor who has defaulted for turnover of rents which the parties have agreed will be security for the loan.

The second interpretation of the "apply for" language is that the parties intended that one of the remedies available to the secured creditor would be to "apply for" the rents to a court of competent jurisdiction. This procedure would be consistent with common law practices and with customary debtor creditor relations. The court finds that the "apply for" language in the CorEast deed of trust reflects the parties' intent that the law as stated in *Frayser's* case would be followed.

■ The court has considered whether CorEast's letter to Brandon notifying Brandon that it was applying for rents is sufficient to give it enforceable rights. The court finds the notice to be insufficient.

Notice that the substitute trustee intended to serve as a receiver is not enough. In *Frayser's Administrator, supra,* the court held that the appointment of a receiver was not effective until such person had given security for his appointment. 81 Va. at 393. Similarly, the court in *In re KNM Roswell Limited Partnership,* 126 B.R. 548 (Bankr.N.D.Ill., 1991), held that a motion for the appointment of a receiver filed pre-petition but not acted upon was insufficient to entitle the mortgagee to the rents. *Id.,* at 556. Therefore, CorEast is in the same position as Price. In this case, both the estate and an entity other than the estate—CorEast and Price—have an interest in the rents which is not enforceable against the debtor because of the automatic stay. In situations similar to this, bankruptcy courts in two recent decisions have come to opposing conclusions as to whether the rents are cash collateral.

*In re Raleigh/Spring Forest Apartments Associates,* 118 B.R. 42 (Bankr. E.D.N.C., 1990), holds that while the assignments in that case were perfected, they were conditional and required some further action by the creditors to enforce. The *Raleigh* court held that the creditors' unenforceable interests were "too remote to qualify as cash collateral." *Id.,* at 45. However, the court afforded the secured creditor some relief in the nature of adequate protection by relying on language in *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) which states that the bankruptcy court should see to it that a lien creditor has the same protections in bankruptcy court that it would get under state law absent bankruptcy. The court reasoned that under state law the rents would be used to pay costs and expenses necessary to maintain the property and fashioned that as the protection to be afforded the creditor. *Id.,* at 46. Thus, the holding in *Raleigh/Spring* is tantamount to a ruling of adequate protection under section 361(3) that the sequestering of rents in excess of costs and expenses to maintain the property is the indubitable equivalent of the creditor's inchoate interest in the rents.

■ Taking a different view, the court in *In re KNM Roswell Limited Partnership,* 126 B.R. 548 (Bankr.N.D.Ill., 1991), held that since the creditor's perfected but inchoate interest in rents is cash collateral, the definition of cash collateral in section 363(a) requires that the rents be considered cash collateral. *Id.,* at 556. In accord with *KNM,* this court finds that the creditors in this case do have an interest in the rents. That interest is perfected as to third parties and perfected and unenforceable as to the debtor. Thus, the interest is cash collateral under section 363(a). However, in accord with the result in *Raleigh,* the creditors' right to adequate protection in this case can rise no higher than their right to the same protection they would have under state law if no bankruptcy was involved. *Butner,* 440 U.S. at 56, 99 S.Ct. at 918.

■ As stated in *Raleigh/Spring* a secured creditor or receiver, absent bankruptcy, would apply rents first to maintenance and costs of preserving the property. Under the preliminary cash collateral order the debtor is using rents for maintenance and expense of the operation. The secured creditors are entitled to no more than that under state law. Therefore, the court finds that the provisions of the preliminary cash collateral order are sufficient to meet the needs of the debtor, while adequately protecting the interests of the creditors. The debtor shall be required to account for all rents received, and will be permitted to make such use of the rents as is provided in the preliminary cash collateral order which shall become a final order. The balance of the rents will be held by debtor in an interest bearing account pending further hearing as to the priority of the lien claimants in the rent.

An appropriate order implementing this memorandum opinion will be entered.