**In re HALL COLTTREE ASSOCIATES, Debtor.**

**Bankruptcy No. 91–12582–AT.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

July 9, 1992.

Thomas J. Catliota, Anne–Marie Grande, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for Chevy Chase Savings Bank, F.S.B.

Kevin M. O'Donnell, Alexandria, Va., for debtor.

Bruce S. Lane, Debra D. Yogodzinski, Harry J. Kelley, Kelley, Drye & Warren, Washington, D.C., for debtor.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This case comes before the court on the motion of Chevy Chase Savings Bank F.S.B. (hereinafter "Chevy Chase") to establish rents as cash collateral and for turnover of cash collateral. A hearing was held on April 22, 1992, at which time the matter was taken under advisement. For the reasons stated below the court will grant Chevy Chase's motion in part and order the immediate turnover of net pre-petition rents currently held in escrow.

1. The debtor made partial payment of the monthly installments for January and March, 1991. All other amounts between December 1, 1990 and June 1, 1991, remain due and owing.

2. An amended version of the original cash collateral agreement remains in effect.

### Findings of Fact

Chevy Chase is the holder of a note in the amount of $13,040,000.00 executed by the debtor, Hall Colttree Associates, for the purpose of acquiring an apartment complex known as Hall Colttree Apartments (hereinafter "the property"). Chevy Chase also holds a duly recorded deed of trust and assignment of rents pertaining to the property. Both the deed of trust and the assignment of rents authorize the debtor to collect and use rents on the property so long as debtor is not in default on the note. Upon a default the debtor's entitlement to collect rents may be revoked.

The debtor defaulted on the note from December 1, 1990, through June 1, 1991.[1] On June 11, 1991, Chevy Chase notified the debtor by letter that it was accelerating the indebtedness evidenced by the note and was revoking the debtor's entitlement to receive any rents collected after the date of default. On June 12, 1991, Chevy Chase filed suit against the debtor in the Circuit Court of Fairfax County, Virginia, to have a receiver appointed. A hearing in that suit was scheduled to take place on June 21 but was stayed when the debtor filed for chapter 11 protection on June 20, 1991.

The parties subsequently entered into a consent order authorizing interim use of cash collateral, under which the debtor is entitled to use rents collected from the property after the bankruptcy petition date.[2] A portion of the pre-petition rents received by the debtor after default have been placed in escrow pending a determination of the rights of the respective parties.[3] On December 9, 1991, Chevy Chase filed the present motion to establish status of rents as cash collateral and request for turnover of cash collateral.

Chevy Chase contends that (1) it has a valid, perfected, enforceable security inter-

3. The amount in escrow ($100,966.00) represents the net pre-petition rents held by the debtor after maintenance, operating expenses, and payment of a retainer to debtor's counsel. *See* Chevy Chase's Reply to the Debtor's Supplement Memorandum, pp. 1–2 (April 21, 1992).

est in the post-default rents; (2) that those rents constitute cash collateral under 11 U.S.C. § 363; (3) that it has not authorized the debtor's use of pre-petition rents nor of any rents accruing after the expiration of the current cash collateral agreement; and (4) that it is entitled to turnover of net pre-petition rents.[4]

Debtor argues that the rents are not cash collateral because Chevy Chase's security interest was not enforceable under Virginia law at the time the bankruptcy petition was filed. Moreover, debtor asserts that even if the pre-petition rents were to be considered cash collateral, Chevy Chase is entitled to nothing more than adequate protection.

*Discussion and Conclusions of Law*

The court must first decide whether the rents collected after default constitute cash collateral as defined in 11 U.S.C. § 363. If so the court must then determine whether Chevy Chase is entitled to turnover of the pre-petition rents.

Under § 363(a) of the Bankruptcy Code the term "cash collateral" is defined as:

[C]ash, ... or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after commencement of a case under this title. 11 U.S.C. § 363.

Section 552(b) extends a pre-petition security interest in proceeds, products, offspring, rents, or profits to those collected post-petition "to the extent provided by

such security agreement and by applicable non-bankruptcy law...." 11 U.S.C. § 552(b).

In *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Supreme Court held that bankruptcy courts must look to state law to determine the existence and extent of a security interest in rents. Accordingly, this court will apply Virginia law to decide whether Chevy Chase holds a valid interest in the rents so as to warrant their classification as cash collateral.

■ Under Virginia law, an assignment of rents is "perfected" when it is recorded along with the deed of trust in the land records. *See In re Vienna Park Properties*, 136 B.R. 43, 52 (S.D.N.Y.1992); *Old Stone Bank v. Tycon I Bldg. Ltd. Partnership*, 946 F.2d 271, 272 (4th Cir. 1991); *In re Brandon Assoc.*, 128 B.R. 729, 730 (Bankr.W.D.Va.1991); *see also* Va. Code Ann. § 55–96 (1991). However, the enforcement of an assignment of rents ordinarily requires the mortgagee to either take possession of the premises or obtain the appointment of a receiver. *Frayser's Administrator v. Richmond & A.R.R. Co.*, 81 Va. 388 (1866) (hereinafter the "*Frayser's* rule").[5] This common law rule makes "sound business sense" as one bankruptcy court recently noted:

The consequences to a lender of taking control of its collateral or assuming dominion and control of its borrower's rents are not insignificant. A mortgagee who takes possession of property or who seized the rents takes on a number of duties. Secured lenders do not always want automatically to assume those responsibilities and the potential liability

---

**4.** Chevy Chase seeks to recover pre-petition rents held in escrow as well as the retainer payment to debtor's counsel. *See* Chevy Chase's Reply to the Debtor's Supplement Memorandum, pp. 1–2. (filed on April 21, 1992).

**5.** On March 2, 1992, Virginia enacted an amendment to Virginia Code § 55–220.1. The amendment effectively overturns Frayser's Administrator v. Richmond & A.R.R. Co., stating that:

Upon recordation, pursuant to § 55–106, ... of any deed, deed of trust or other instru-

ment granting, transferring or assigning ... rents or profits arising from real property ... the interest of the ... assignee shall be fully perfected as to the assignor and all third parties without the necessity of ... (ii) obtaining possession of the real property, ... (iv) securing the appointment of a receiver, or (v) taking any other affirmative action.
Virginia House Res. 312 (1992).
Pursuant to Article IV, § 13 of the Constitution of Virginia the newly enacted amendment will not take effect until July 1, 1992. Therefore, it does not govern the present case.

that may follow every time a mortgage goes into default. *In re Raleigh/Spring Forest Apartments Associates*, 118 B.R. 42, 44–45 (Bankr.E.D.N.C.1990).[6]

██ Under Virginia law, however, the parties are permitted to contract around the *Frayser's* rule. In *Fidelity Bankers Life Insurance Company v. Williams*, 506 F.2d 1242 (4th Cir.1974), the Fourth Circuit recognized the validity of an "absolute" assignment of rents clause and held that a mortgagee had an absolute right to possession of the encumbered property, as well as the rents, immediately "upon default" by the mortgagor. To determine whether an assignment of rents is intended by the parties to be "absolute," a court is required to construe the contractual provisions of the Deed of Trust and Assignment of Rents. That is, the court must determine whether the parties intended to contract around the *Frayser's* rule. If so, the assignment becomes enforceable from the moment of default.

██ Many bankruptcy courts have interpreted the Supreme Court's ruling in *Butner v. United States* to require that the creditor's interest be not only "perfected" under state law but "enforceable" at the time of filing as well. *See, e.g., Virginia Beach Fed. Sav. & Loan v. Wood*, 901 F.2d 849 (10th Cir.1990); *In re Gotta*, 47 B.R. 198 (Bankr.W.D.Wis.1985); *In re Raleigh/Spring Forest Apartments Associates*, 118 B.R. 42 (Bankr.E.D.N.C.1990). According to these courts if state law requires the holder of a validly perfected security interest in rents to take possession or have a receiver appointed before enforcing its interest the creditor must have done so at the time the bankruptcy petition is filed in order to receive the protection afforded for cash collateral. Several courts considering Virginia law have endorsed this reasoning, ruling that rents are not cash collateral unless either the assignment was "absolute" or the secured creditor took possession before the petition date. *See, e.g., In re Vienna Park Properties*, 120 B.R.

332 (Bankr.S.D.N.Y.1990), *aff'd in part rev'd in part*, 136 B.R. 43 (S.D.N.Y.1992); *In re Hall Elmtree Assocs.*, 126 B.R. 73 (Bankr.D.Ariz.1991). I disagree with these latter holdings.

In a more recent decision applying Virginia law, the United States District Court for the Southern District of New York reversed the Bankruptcy Court's determination that rents were not cash collateral where a security interest was not fully enforceable at the time of filing. *In re Vienna Park Properties*, 136 B.R. 43 (S.D.N.Y.1992). The District Court held that while Virginia law required the secured creditors to take possession before they could enforce their right to collect rents, "the mere existence of that enforcement hurdle 'does not preclude the lienholder's having rights under state law which ... rise to the level of a "security interest" in the rents sufficient to render the rents cash collateral.'" *Vienna Park Properties*, 136 B.R. at 54 (quoting *In re Park at Dash Point L.P.*, 121 B.R. 850, 853 (Bankr. W.D.Wash.1990)). *See also In re KNM Roswell L.P.*, 126 B.R. 548 (Bkrtcy.N.D.Ill. 1991) (post-petition rents constituted cash collateral where assignee under assignment of rents had a perfected, but inchoate, security interest in rents under New Mexico law as of the date of debtor's bankruptcy filing). *In re Brandon Associates*, 128 B.R. 729 (Bankr.W.D.Va.1991).

Although *Butner* rejected the notion that bankruptcy law affords an automatic security interest in rents and profits to an assignee of rents the Court also recognized that bankruptcy judges should "take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy the same protection he would have under state law if no bankruptcy had ensued." 440 U.S. at 56, 99 S.Ct. at 918. The Court stated further that bankruptcy judges could "avoid ... potential loss [to secured creditors] *by sequestering rents* or authorizing immediate state-law fore-

**6.** A secured creditor or receiver, absent bankruptcy, would apply rents first to the mainte-

*nance and costs of preserving the property.*

closures." *Id.* at 56–57, 99 S.Ct. at 919. (Emphasis Added).

Section 363 requires that both the estate and an entity other than the estate have an "interest" in rents to render them cash collateral. Chevy Chase satisfied Virginia's perfection requirements when it recorded the deed of trust and assignment of rents, thereby solidifying its "interest" in rents. Applying the District Court's rationale in *Vienna Park,* this court need not reach a conclusion as to whether Chevy Chase's perfected interest was enforceable at the time of filing to determine that the post-default rents are cash collateral. Perfection of the interest under state law is sufficient in and of itself to satisfy the requirement of § 363. *In re Vienna Park Properties,* 136 B.R. 43, 54 (S.D.N.Y.1992); *see also In re Park at Dash Point L.P.,* 126 B.R. 548 (Bankr.W.D.Wash.1990); *In re KNM Roswell L.P.,* 126 B.R. 548 (Bankr. N.D.Ill.1991); *Accord In re Brandon Associates,* 128 B.R. 729 (Bankr.W.D.Va.1991). Accordingly, Chevy Chase is entitled to the protections of §§ 361 and 363 of the Bankruptcy Code.

 Chevy Chase also requests that all net pre-petition rents be turned over immediately.[7] Section 361(3) authorizes the court to provide adequate protection for cash collateral by "granting such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest." Moreover, § 105 allows the court to "issue any order ... necessary or appropriate to carry out the provisions of this title." At least one other court has held that "enforcing a secured creditor's interest in the rents by declaring the mortgagee to be entitled to the rents collected after a certain date when the mortgagee would have been able to enforce that interest in state court but for the automatic stay is a proper exercise of bankruptcy jurisdiction." *In re Park at Dash*

*Point,* 121 B.R. 850, 860 (Bkrtcy. W.D.Wash.1990).

In the present case, the parties have set aside a portion of the net pre-petition rents collected by the debtor in an escrow account. The remainder were apparently used to pay the debtor's counsel's retainer fee.

As to the amount held in escrow, the court finds turnover to be the most appropriate measure of adequate protection. These funds were set aside by the debtor pending a determination of the rights of the parties. Moreover, the debtor has offered no alternative means by which it would protect Chevy Chase's interest in the pre-petition rents.

The retainer paid to debtor's counsel presents a slightly different story. That amount has already been spent by the debtor and the court is reluctant to require immediate turnover based on the evidence at hand. More appropriate means of protection may exist, including the granting of a replacement lien as contemplated by Bankruptcy Code § 361(2). If the parties are unable to agree as to an appropriate means of protection, they may request a hearing at which time the court will consider all available means of protection, including turnover.

Accordingly, the debtor will be ordered to immediately turn over to Chevy Chase the entire balance of the escrow account. Furthermore, the debtor will be required to adequately protect Chevy Chase for amounts used to pay the retainer fee as well as for future rents collected by the debtor which are not yet provided for in the current cash collateral agreement.

---

7. Debtor objects to Chevy Chase's requesting turnover by motion instead of adversary proceeding. While a typical turnover request must be prosecuted by Adversary Proceeding, cash collateral issues may be decided by motion. Bankruptcy Rule 9014. Because the present request for turnover is so essentially tied to issues of cash collateral and adequate protection the court will allow Chevy Chase to include its request for immediate turnover within the motion to establish rents as cash collateral.