**In re 1560 WILSON BOULEVARD L.P., Debtor.**

**Bankruptcy No. 96–10403–AM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

June 25, 1996.

820

Kermit Rosenberg, Holmes, Rosenberg & Doherty, P.C., Arlington, VA, for debtor in possession.

Richard E. Lear, Holland & Knight, Washington, DC, for Equitable Life Assurance Society.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on the motion of The Equitable Life Assurance Society of the United States ("Equitable") to require the debtor's former counsel, Arnold & Porter, to disgorge a prepetition retainer on the ground that the retainer represents cash collateral subject to Equitable's lien. The debtor, 1560 Wilson Boulevard, L.P., filed memoranda in opposition to Equitable's motion. A hearing was held on May 21, 1996, after which the court took the matter under advisement. The court has reviewed the memoranda and the relevant case law and is now prepared to rule.[1] For the reasons stated herein, the court concludes that Equitable's motion to disgorge the prepetition retainer should be granted as to the portion not already applied.

1. A similar motion was filed in the related case of 1550 Wilson Boulevard, L.P., No. 96–10346–AM, as to which Equitable is also the lender. Because the relevant language of the loan docu-

*Facts*

The essential facts are undisputed. 1560 Wilson Boulevard, L.P. ("1560 Wilson"), a Virginia limited partnership, filed a chapter 11 petition in this court and continues in operation of its business as debtor in possession. Its sole asset is a 12–story office building located at 1560 Wilson Boulevard, Arlington, Virginia.

The debtor's property is subject to a deed of trust and assignment of rents in favor of Equitable to secure a promissory note dated December 9, 1987. The original principal amount of the note was $20,640,000. The amount claimed due by Equitable on the filing date—a portion of which, however, the debtor disputes—is $19,255,395.

The deed of trust states in part:

PROVIDED ALWAYS ... until the happening of any occurrence or event which gives beneficiary the option to cause the entire indebtedness then secured by this deed of trust to become due and payable, grantor shall have the right to possess and enjoy the premises and to receive the rents, issues and profits thereof ...

4. That the whole of the principal sum and the interest shall become due at the option of the beneficiary: (a) after default in the payment of any instalment of principal and/or interest secured hereby for 10 days; ...

The assignment, recorded contemporaneously with the deed of trust, contained the following language:

A. So long as there shall exist no default by the Assignor in the payment of any indebtedness secured hereby or in the performance of any obligation of the Assignor herein or in the Mortgage or any other instrument securing said indebtedness, the Assignor shall have the right to collect, but not more than 30 days prior to accrual, all rents, issues and profits from the premises and to retain, use and enjoy the same.

ments differs between the two cases, a separate opinion has been issued in 1550 Wilson Boulevard reading a somewhat different result.

B. Upon the payment in full of all indebtedness secured hereby, as evidenced by the recording or filing of an instrument of satisfaction or full release of the Mortgage without the recording of another Mortgage in favor of the Assignee affecting the premises, this Assignment shall become and be void and of no effect.

\* \* \* \* \* \*

5. The whole of said indebtedness shall become due ... (b) at the option of the Assignee, ... after any default by the Assignor hereunder and the continuance of such default for 10 days after notice and demand or such longer period if deemed necessary by the Assignee in its reasonable discretion.

6. After any ... default by the Assignor in the payment of said indebtedness ..., the Assignee, at its option, without notice, irrespective of whether Declaration of Default under any deed of trust has been delivered to the trustee ... may: enter upon, take possession of, and operate the premises ... and either with or without taking possession of the premises, in its own name, sue for or collect and receive all rents, issues and profits ...

\* \* \* \* \* \*

11. Notwithstanding anything to the contrary contained in this Assignment, a default, as the term is used herein, shall not be deemed to have occurred until all applicable notices, if any, have been given and any applicable cure period, if any, shall have expired without the cure of such default.

The original maturity date of the note was December 1, 1992, but on May 14, 1993, an allonge was executed extending the maturity to January 1, 1996.

On May 14, 1993, the debtor also executed a supplement to and restatement of the original assignment of rents.[2] The assignment of rents, as amended and restated in its entirety, provides:

A. Assignee hereby appoints Assignor as the sole and exclusive agent of the Assignee to receive and collect all rents, issues, income and profits from the premises and so long as there shall exist no default by the Assignor in the payment of the Indebtedness or in the performance of any obligation of the Assignor herein or in the Mortgage or any other instrument securing the Indebtedness, the Assignor shall be the Assignee's sole and exclusive agent to receive and collect all rents, issues, income and profits from the premises and to retain and use the same, subject to the limitations set forth herein or in the other documents evidencing, securing or relating to the Indebtedness.

B. Upon the payment in full of the Indebtedness, as evidenced by the recording or filing of an instrument of satisfaction or full release of the Mortgage in favor of the Assignee affecting the premises, this Assignment shall become and be void and of no effect.

\* \* \* \* \* \*

5. The whole of said indebtedness shall become due ... (b) at the option of the Assignee, ... after any default by the Assignor hereunder and the continuance of such default for ten (10) days after notice and demand or such longer period if deemed necessary by the Assignee in its reasonable discretion.

6. After any ... default by the Assignor herein ..., Assignor's rights as sole and exclusive agent of Assignee shall terminate, without notice and irrespective of whether any notice of default has been given under the Mortgage, and Assignee shall have the sole and absolute right in its own name, without the necessity of taking possession of the premises or seeking the appointment of a receiver by a court, to collect and receive all rents, income, issues and profits.... At Assignee's option, Assignee may also: enter upon, take possession of, and operate the premises....

The most salient feature of the amended and restated assignment of leases is that the language of numbered Paragraph 11 in the original assignment of leases was **not** included.

---

**2.** In its memorandum in opposition to Equitable's motion, the debtor has failed to appreciate that the loan documents in its case are not identical to those in *1550 Wilson Boulevard, L.P.*

The debtor made payments through November, 1995. The debtor, however, did not make the December payment. On December 22, 1995, the debtor paid a $108,000 retainer to Arnold & Porter.[3] On January 25, 1996, Equitable sent a default notice to the debtor revoking the debtor's right to collect rents. The debtor responded by filing its chapter 11 petition on January 29, 1996, and continues to operate its business as a debtor in possession. At some point shortly prior to the filing, Arnold & Porter applied $26,614 of the retainer to prepetition work it had done on the debtor's behalf. This court subsequently disapproved the application of Arnold & Porter to be employed as counsel to the debtor in possession based on a conflict of interest. The court nevertheless approved, on a quantum meruit basis, the firm's application for professional compensation and reimbursement of expenses in the amount of $35,092.06. In approving the compensation and expenses, however, the court expressly reserved ruling on whether the firm could draw down on the retainer for the amount of the approved fees and expenses and whether

the $46,293.94 balance of the retainer could be transferred to the debtor's new counsel, Holmes, Rosenberg & Doherty, P.C.[4]

## Conclusions of Law

Equitable contends that the unapplied retainer paid to Arnold & Porter must be disgorged because it is property of the estate and is subject to Equitable's cash collateral interest.[5]

■ Here, the debtor does not dispute that the retainer is property of the estate that is being held in trust.[6] Nor does it dispute that the post-petition rents are Equitable's cash collateral. The only disagreement between the parties concerns those rents that were paid prepetition—and prior to Equitable's invocation of its right to collect rents on account of the debtor's default—to Arnold & Porter as retainer. Equitable asserts that it has had a perfected security interest in all rents of the properties since the recordation of the assignment of rents, and that it need do nothing further whatsoev-

3. The parties have stipulated that the source of the retainer was rents collected from the property. In argument, the debtor asserted that the retainer consisted entirely of rents collected prior to default. That it consisted entirely of rents collected prior to a formal declaration of default is self-evident, but whether the rents were collected prior to or after the debtor's failure to make the December 1995 payment cannot be determined from the limited evidence presented at the hearing, and the court expressly makes no finding.

4. In approving compensation to Arnold & Porter, the court authorized the physical transfer of the remaining $46,293.94 to Holmes, Rosenberg & Doherty, P.C. pending, and subject to, the ruling on the present motion.

5. As a preliminary matter, Equitable contends that the debtor is judicially estopped from arguing that Equitable does not have a lien in the retainer. The court does not concur. Equitable relies on the March 6, 1996 stipulated cash collateral order, which states: "WHEREAS Equitable is a secured creditor in this case having a perfected lien on the Property and a proper, perfected assignment in all of the Debtor's right, title and interest in or under certain leases affecting the Property and all of the Rents of the Property." (Cash Collateral Order, p. 4) Accordingly, Equitable contends that the debtor is barred from taking any position inconsistent with

the cash collateral order. *United Virginia Bank v. B.F. Saul Real Estate*, 641 F.2d 185, 190 (4th Cir.1981) (litigants prohibited from playing "fast and loose" and are barred from taking inconsistent positions during the course of litigation). The debtor responds that both parties were aware of the dispute over the retainer and, as a result, it was specifically "carved out" of the cash collateral order. The court agrees. Despite its broad prefatory language, the cash collateral specifically goes on to state: "Such remaining Cash Collateral collected (whether before, on or after the Petition Date) and in the Debtor's possession and control on or after the Petition Date but prior to the execution of this Stipulation and order *shall not include sums paid as a retainer to Debtor's counsel prior to the Petition Date out of the Cash Collateral collected by the debtor.* Nothing in this Stipulation and Order shall be construed as a waiver of any right held by Equitable to seek the return of any and all such retainers from Debtor and/or Debtor's counsel or *the right of the Debtor or its counsel to oppose any such attempt.*" (Cash Collateral Order, p. 6) (emphasis added).

6. Retainers in bankruptcy cases are generally considered advance payments of fees that are to be held in trust until the court awards a fee and authorizes the fee to be paid from the fund. The bankruptcy retainer is, then, a deposit for work to be performed in the future. *In re Plaza Hotel Corporation*, 111 B.R. 882 (Bankr.E.D.Calif.1990).

er to invoke its rights. Accordingly, Equitable contends that—irrespective of whether the debtor was default under its obligations to Equitable—"all of the Rents of the Property have been Equitable's collateral since 1987 and, on the Petition Date, the Rents became 'cash collateral' as defined under section 363(a) of the Code." Reply Memorandum of Equitable, p. 9. For its part, the debtor contends that since Equitable does not have a lien on pre-default rents under the loan documents, the retainer does not constitute Equitable's cash collateral.

■ Since Equitable objects to the payment of the debtor's attorneys fees from the retainer, whether or not the rents from which the retainer originated are "cash collateral" is material.[7] Section 363(a), Bankruptcy Code, defines cash collateral as:

cash, negotiable instruments, documents of title, securities, deposits accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the ... rents ... of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a). Accordingly, under § 363(a), rents received from a mortgaged property, either before or after a bankruptcy filing would be cash collateral to the extent they are subject to a security interest or lien under § 552(b).[8] For bankruptcy purposes, a "security interest" is defined as a "lien created by agreement" and a "security agreement" is defined as "agreement ... that provides for a security interest."

§§ 101(50) and (51), Bankruptcy Code. Similarly, a lien is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." § 101(37), Bankruptcy Code.

In *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Supreme Court held that bankruptcy courts must look to state law to determine the nature and validity of a security interest in rents. In this connection, Va.Code Ann. § 55–220.1, upon which Equitable chiefly relies, provides:

The recordation pursuant to § 55–106 ... of any deed, deed of trust or other instrument ... assigning the interest of the ... assignor ... rents or profits arising from the real property described in such deed, deed of trust or other instrument, shall fully perfect the interest of the ... assignee as to the assignor and all third parties without the necessity of (i) furnishing notice to the assignor or lessee, (ii) obtaining possession of the real property, (iii) impounding the rents, (iv) securing the appointment of a receiver, or (v) taking any other affirmative action. The lessee is authorized to pay the assignor until the lessee receives written notification that rents due or to become due have been assigned and that payment is to be made to the assignee. This section shall apply to all instruments of record before, on or after July 1, 1992.

■ The effect of this statute, which was enacted to modify the long-standing rule of Virginia law that had required an affirmative act by the lender to perfect an assignment of rents,[9] is to make it clear that a lender's

---

**7.** Under § 363(c)(2), Bankruptcy Code, "[a debtor in possession] may not use ... cash collateral ... unless—(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use ... in accordance with the provisions of this section."

**8.** § 552(b), Bankruptcy Code, provides: "[I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to ... rents ... of such property, then such security interest extends to such ... rents ...

acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law."

**9.** *Frayser's Administrator v. Richmond & A.R.R. Co.,* 81 Va. 388 (1866) ("Frayser's rule"). Under Frayser's rule, the enforcement of an assignment of rents generally required the mortgagee to either first take possession of the premises or to obtain the appointment of a receiver. However, the parties could, by appropriate language in the security instruments, contract around Frayser's rule by providing for an "absolute" assignment of rents upon default without the necessity for the mortgagee taking any other steps to protect

security interest under an assignment of rents is perfected when the assignment is recorded in the land records. Furthermore, no notice need be provided to the assignor and no affirmative action need be taken to perfect the interest of the assignee as to the assignor and all third parties.[10]

 There can be little doubt that where an assignment of rents has been properly recorded, rents collected by the debtor prepetition and held in an identifiable account constitute cash collateral even in the absence of an affirmative prepetition act to enforce direct collection of the rents. *In re Hall Colttree Associates,* 146 B.R. 675 (Bankr.E.D.Va.1992) (Tice, J.); *In re Vienna Park Properties,* 136 B.R. 43 (S.D.N.Y.1992) *aff'd,* 976 F.2d 106 (2d Cir.1992).[11] It is equally clear that a lender's security interest may also extend to rents that have been paid over prepetition to debtor's counsel as a retainer for services to be performed in a bankruptcy case. *Hall Colttree,* 146 B.R. at 679.[12] The question before the court in this case is whether the language in the assignment of leases gave the debtor an absolute right to use the rents prior to the lender's formal declaration of a default, thereby compelling a different result than the one reached in *Hall Colttree.*

 The loan documents in this case are not a model of internal consistency. As often seems to be the case in commercial loan documentation, clause is piled upon clause with scant attention by the drafter to harmonizing their provisions. Nevertheless, it is the duty of the court, where a business transaction is based upon more than one document executed contemporaneously by the parties, as is here the case, to construe

the documents together to determine the intent of the parties. *Daugherty v. Diment,* 238 Va. 520, 385 S.E.2d 572 (1989) (provisions of land contract, note, deed of trust and assignment executed contemporaneously construed harmoniously). In construing such written instruments, Virginia follows the "plain meaning" rule stating that "[W]here an agreement is complete on its face, is plain and unambiguous in its term, the court is not at liberty to search for its meaning beyond the instrument itself." *Capital Commercial Properties, Inc. v. Vina Enterprises, Inc.,* 250 Va. 290, 294, 462 S.E.2d 74, 77 (1995). Consequently, courts cannot "read into contracts language which will add to or take away from the meaning of the words already contained therein." *Wilson v. Holyfield,* 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984).

 The restated assignment of leases states unambiguously in paragraph A that the assignor has the "right to collect ... all rents, issues and profits from the premises and to retain, use and enjoy the same," so long as the assignor does not default "in the *payment* of any indebtedness" (emphasis added). Paragraph 5 requires a 10–day notice and opportunity to cure prior to *acceleration* of the indebtedness, but paragraph 6 allows the lender to collect rents after "any default ... in the *payment* of said indebtedness ... *without notice, irrespective* of whether Declaration of Default under any deed of trust has been delivered to the trustee." (emphasis added). While at first blush the 10–day notice requirement of paragraph 5 appears to conflict with the no-notice language in paragraph 6, the two can be harmonized by recognizing acceleration as a remedy separate and distinct from collection

its rights. *Fidelity Bankers Life Insurance Company v. Williams,* 506 F.2d 1242 (4th Cir.1974).

10. Of course, the statute also protects the tenant by permitting the tenant to pay the landlord, instead of the lender, until the tenant receives written notice that rent is to be paid to the lender.

11. Both *Hall Colttree* and *Vienna Park* were decided before the effective date of Va.Code Ann. § 55–220.1. If anything, the enactment of § 55–220.1 strengthens the conclusion reached in those cases.

12. In *Hall Colttree,* the court, while holding that a post-default retainer paid to the debtor's bankruptcy counsel from rents constituted cash collateral, declined "on the evidence at hand" to order disgorgement pending a determination of whether another form of adequate protection, such as the grant of a replacement lien, would protect the lender's interest. The court made it clear, whoever, that if other forms of adequate protection were insufficient, it would consider ordering turnover of the retainer.

of the rents. That is, the lender cannot call the loan without first giving the borrower notice of the payment default and an opportunity to cure. However, the lender has the right, in the event of "any" default in payment—and without first being required to accelerate the indebtedness—to collect the rents and apply them to the note.[13] More to the point, the debtor's right under paragraph A "to retain, use and enjoy" the rents does not continue past the point where there has been a default in *payment.*

Given the foregoing, the court concludes that the assignment of leases did not give the debtor an absolute right to use the rents after default but prior to the lender's formal declaration of default, and Equitable's interest in the unapplied portion of the $108,-000 retainer is superior to that of Arnold & Porter. Therefore, the unapplied portion of the retainer, must be disgorged.[14] Accordingly, Arnold & Porter will be not be permitted to draw down on the retainer with respect to the $35,092.06 in post-petition fees and expenses that the court has approved.[15] It also follows that the $46,293.94 currently being held by Holmes, Rosenberg & Doherty is property of the estates, subject to Equitable's lien, and, as such, must be turned over to the debtor in possession. § 542(a), Bankruptcy Code. Since it is undisputed that the funds consist entirely of rents subject to Equitable's security interest, they constitute

cash collateral[16] and cannot now be used by the debtor to pay a post-petition retainer to Holmes, Rosenberg & Doherty unless Equitable consents or the court permits such use on a proper showing of adequate protection. § 363(c)(2) and (e), Bankruptcy Code. Although the debtor argued at the hearing on the motion to disgorge that Equitable's interest in the rents is more than adequately protected, there is insufficient evidence before the court at this time to make that determination, and the court declines on the present record to make a ruling one way or the other.[17] Rather, the court will require that the funds now held by Holmes, Rosenberg & Doherty be paid over to the debtor in possession and held subject to the terms of the existing cash collateral order and any future orders this court may enter authorizing the debtor to use cash collateral. This ruling is without prejudice to the debtor's right to file a motion to use Equitable's cash collateral to pay a reasonable post-petition retainer to Holmes, Rosenberg & Doherty, P.C.

13. In the companion case, 1550 Wilson Boulevard, L.P., No. 96–10346, the presence of a provision—Paragraph 11—in the assignment of leases which modified the interpretation of when a "default" would be deemed to have occurred by assuring the debtor of notice and an opportunity to cure before the lender would be able to invoke direct collection of rents, compelled a different result. In the present case, however, as has been noted, Paragraph 11 was not included within the terms of the amended and restated assignment of leases.

14. With respect to the $26,614 drawn down by Arnold & Porter prior to the chapter 11 filing, the court's present ruling is not a determination as to the propriety of such payment and is without prejudice to the right of a party with proper standing to object to, and seek disgorgement of, such payment under, for example, §§ 329(b) or 547(b), Bankruptcy Code.

15. This ruling is without prejudice to the debtor's right to seek court approval to use Equitable's

cash collateral for the purpose of paying such fees.

16. *See, Green Hills Production Credit Assn. v. Gerlach (In re Gerlach),* 64 B.R. 25 (Bankr. W.D.Mo.1986).

17. In *Principal Mutual Life Insurance Co. v. Atrium Development Co. (In re Atrium Development Co.),* 159 B.R. 464, 471 (Bankr.E.D.Va.1993), Judge Tice noted: "Adequate protection is typically established by the fact that cash is being used to maintain and enhance the value of the underlying income producing real property in which the creditor also usually holds a security interest. Other factors are also considered such as whether there is equity in the property, whether the property is declining in value, and whether or not post-petition payments due the creditor are current." In particular, no evidence has been presented to this court as to the value of the property or what equity, if any, exists.