In re the **ATRIUM DEVELOPMENT COMPANY, Debtor.**

**PRINCIPAL MUTUAL LIFE INSURANCE COMPANY,**
Plaintiff,

v.

The **ATRIUM DEVELOPMENT COMPANY, Defendant.**

**Bankruptcy No. 93–10714–T.
CMN 93–594–T.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Aug. 3, 1993.

John B. Raftery, Lawrence H. Fischer, and Nelson Deckelbaum, Deckelbaum Ogens & Fischer, Chtd., Washington, DC, for Principal Mut. Life Ins. Co.

David H. Dickieson and Jason Green, Silverstein and Mullens, Washington, DC, for debtor.

Ira C. Wolpert, Mary Atchley Jester, and Gary M. Zinkgraf, Foley & Lardner, Washington, DC, for Capital.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

#### Introduction

In this chapter 11 case, Principal Mutual Life Insurance Company ("Principal") filed

a motion for relief from stay for the purpose of foreclosing its deed of trust against the debtor's principal asset, an office building. The debtor objected to the relief from stay motion and filed its own motion for authority to use the building rents as cash collateral pursuant to 11 U.S.C. § 363(c)(2). Prior to commencement of debtor's chapter 11 case, Principal had exercised its rights under the deed of trust and a collateral assignment of leases to have the building tenants pay rent directly to Principal.

Final hearing on Principal's motion and on debtor's cash collateral motion was held on June 16, 1993. At the conclusion of the hearing the court announced findings of fact and conclusions of law and made a bench ruling granting Principal's motion for relief from stay pursuant to 11 U.S.C. § 362(d)(2). As a consequence of the granting of the relief from stay motion the court also denied debtor's cash collateral motion.

This opinion supplements the court's bench ruling of June 16, 1993, and addresses primarily debtor's motion for use of cash collateral.

### Facts

The Atrium Development Company, a Virginia general partnership, is a chapter 11 debtor in possession as a result of an involuntary petition filed on February 18, 1993. The general partners of debtor are Time–Life Books, Inc., The Domyan Family Trust and APIC–I, L.P. (a California limited partnership). Arpad Domyan is the designated representative of the Domyan Family Trust and APIC–I, L.P. The involuntary petition, which was unopposed, was filed by Arpad Domyan apparently because Time–Life would not agree to the filing of a voluntary petition.

Debtor's principal asset is an office building known as the Atrium located in Old Town, Alexandria, Virginia. The principal tenant of the building is Time–Life, which occupies approximately 90 percent of the space and pays rent of approximately $200,000.00 per month. The building is managed by a separate management company operated by debtor's managing general partner.

The Atrium building is subject to the following deeds of trust:

| Holder | Approximate Balance |
|---|---|
| 1st Principal Mutual Life Ins. Co. | $13,122,000.00 |
| 2nd Capital Real Estate, L.P. | 3,551,911.00 |
| Total | $16,673,911.00 |

Principal's loan documents executed by Atrium include (1) promissory note (nonrecourse) dated December 16, 1986, in the original principal amount of $13,300,000.00, (2) deed of trust and security agreement, and (3) collateral assignment of leases and rents. The deed of trust contains a comprehensive paragraph (¶ 1.11, at p. 11) by which Atrium has assigned to Principal, among other items, all rents from the property. The separate assignment of leases and rents states that the lease assignment is "irrevocable" although it grants to debtor a license to collect the rents "so long as there shall exist no default" in debtor's payments under the note. The assignment further provides that upon default, Principal may:

> either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, revoke the license granted to Assignor ... and collect all rents, income and profits arising under said leases or from the Premises described therein and/or may take possession of the Premises described in said leases and/or mortgage and have, hold, manage, lease and operate the same on such terms and for such period of time as Assignee may deem proper and either with or without taking possession of said Premises in its own name ...

Principal's deed of trust, lease assignment, and UCC financing statements were recorded in the appropriate filing offices at the time of the loan in 1986.

As a result of debtor's default of note payments in November 1992, Principal, acting pursuant to the loan documents, declared a sequestration of all rents on November 19, 1992. On that date debtor was given written notice that its license to col-

lect rents was revoked, and all tenants were given written notice to pay rent directly to Principal. Following this notice on December 1, 1992, Principal began to collect the rents and had continued to do so to the time of hearing on the motions before the court.

Notwithstanding Principal's collection of the rents, it allowed the debtor to remain in possession of the premises through its management company and to continue to function as landlord. For this purpose, Principal paid to the management company from rents collected necessary expenses for operating the property including the management fee. In addition, Principal remitted to the debtor the sum of $25,000.00 for debtor's use as a refundable good faith deposit on a loan application by which debtor hoped to refinance the property with a new lender.

The fair market value of Atrium's building is approximately $15,000,000.00.[1]

The debtor has no equity in the real property, and the property is not necessary to an effective reorganization.

### Discussion and Conclusions of Law

As stated above, at the conclusion of the hearing on June 16, 1993, the court granted Principal's motion for relief from stay pursuant to § 362(d)(2) of the Bankruptcy Code based upon my finding there was no equity in the property, and the property was not necessary to an effective reorganization. The second element of the ruling is based upon the language used by the Supreme Court in *United Savings Associa-*

*tion of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), to the effect that property is not necessary to an effective reorganization unless there is a "reasonable possibility of a successful reorganization within a reasonable time." 484 U.S. at 376, 108 S.Ct. at 633. I reach this conclusion based upon facts recited in my bench ruling.

Since at hearing the motion for relief from stay was denied, I consequently also denied debtor's motion to use cash collateral without ruling on various arguments of the parties. *See* 11 U.S.C. § 363(d).[2] I now address the merits of those other issues raised by this particular motion.

■ The first and most contentious issue over debtor's motion is whether the rents assigned by debtor to Principal constitute cash collateral which the bankruptcy could authorize debtor to use under Code § 363.[3]

Principal contends that rents payable by tenants of debtor's office building are not cash collateral which this court could authorize debtor to use under § 363(c)(2) of the Bankruptcy Code. Prepetition, the debtor had defaulted on the note payments, and the lender Principal had activated provisions of debtor's collateral assignment of leases which permitted Principal to directly receive all rents from tenants of the building. Principal argues that this action effectively and permanently deprived debtor of any right to collect rents and thus that this court cannot authorize their use by debtor.

1. Both parties called appraisal witnesses. Principal's witness estimated the value to be $14,-000,000.00; debtor's witness placed a value of $16,700,000.00. Appraisal was made difficult in this case because the Time–Life lease expires in 1996, and this tenant has declined to state whether it will exercise its contractual right to renew. Thus, a major income component of the valuation of the property was open to question.

2. Section 363(d) states that a debtor in possession may use cash collateral if authorized under § 363(c) only to the extent not inconsistent with any relief granted under § 362(d). Since I have granted Principal relief from stay under § 362(d) the debtor would not be entitled to use

cash collateral even if this court were otherwise inclined to authorize such use under § 363(c).

3. Section 363(a) provides:

(a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

The issue raised here goes a step beyond what has been the typical perfection issue between debtor-owners and secured creditors over cash collateral rights in building rents. That typical issue is illustrated by this court's opinion in *In re Hall Colttree Associates*, 146 B.R. 675 (Bankr.E.D.Va. 1992), and concerns whether the secured creditor as assignee of the leases has so perfected its interest prepetition that rents constitute cash collateral.

In *Hall Colttree*, this court in substance held that rents under a collateral assignment of rents perfected (but not fully activated by the appointment of a receiver) prepetition did constitute cash collateral of the lender. 146 B.R. at 677. While both parties here rely on *Hall Colttree* to support their positions, there is a major factual distinction between that case and this: here the creditor sequestered the rents prepetition pursuant to its contractual rights. Thus the issue here concerns enforcement of a rent assignment rather than the usual perfection.

 In resolving the issue this court must consider several principles which were examined in the *Hall Colttree* opinion:

1. State law determines the existence and extent of a security interest in rents. 146 B.R. at 677 (citing *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

2. Under "Frayser's rule"[4] Virginia common law required that the creditor take possession of the premises or obtain appointment of a receiver in order to enforce or activate its assignment of rents. 146 B.R. at 677.

3. Virginia law permits the parties to contract around Frayser's rule and agree that the creditor has the absolute right to the rents immediately upon default without the necessity for entering into possession or obtaining a receiver. 146 B.R. at 678

(citing *Fidelity Banker's Life Insurance Company v. Williams*, 506 F.2d 1242 (4th Cir.1974)).

4. Under Virginia law, depending on the contract, an assignment of rents may be perfected when it is recorded in the land records. In *Hall Colttree*, this court held that the parties had contracted around Frayser's rule and perfected the assignment by recording documents of assignment prepetition. 146 B.R. at 677. Thus the rents constituted cash collateral. *See also In re Vienna Park Properties*, 136 B.R. 43, 54 (S.D.N.Y.1992), *aff'd* 976 F.2d 106 (2d Cir.1992).

5. Virginia Code § 55–220.1, effective July 1, 1992, effectively overturned Frayser's rule by providing that it is no longer necessary for a secured creditor to either obtain possession of the property or the appointment of a receiver to achieve perfection. 146 B.R. at 677 n. 5.

6. Finally, regardless of whether a secured creditor takes any action to enforce its rent assignment prepetition, postpetition rents are nevertheless cash collateral if the assignment is perfected under state law. 146 B.R. at 679 (citing *In re Vienna Park Properties*, 136 B.R. 43, 54 (S.D.N.Y.1992), *aff'd* 976 F.2d 106 (2d Cir.1992)).

As noted above, the district court's decision in *Vienna Park Properties*, 136 B.R. at 43, relied upon by this court in *Hall Colttree* was affirmed by the United States Court of Appeals for the Second Circuit. *In re Vienna Park Properties*, 976 F.2d 106 (2nd Cir.1992). The court of appeals implied that under Virginia law, prepetition enforcement of a rent assignment would also permit the secured creditor to collect the rents postpetition. 976 F.2d at 114.[5] The court held therefore that although the creditor could not take the necessary steps to enforce the rent assignment postpetition, the rents nevertheless had to be seques-

---

**4.** *Frayser's Administrator v. Richmond & A.R.R. Co.,* 81 Va. 388 (1866).

**5.** "The necessary steps for enforcement of the security interest under Virginia law were not satisfied prior to bankruptcy. Section 362 of

the Bankruptcy Code prevents the Banks from taking such steps after Vienna Park filed the bankruptcy petition. 11 U.S.C. § 362. Thus the Banks are not entitled to collect the rents." 976 F.2d at 114.

tered and were subject to protection as cash collateral under § 363. 976 F.2d at 114.

Although the inferences to be drawn from the decision of the appellate court in *Vienna Park Properties* are dicta, there are several bankruptcy court opinions dealing directly with the issue raised here and which have reached conflicting results.

Supporting Principal's position that the prepetition activation of the rent assignment removes the rent from the bankruptcy estate are *In re Mount Pleasant Limited Partnership*, 144 B.R. 727 (Bankr. W.D.Mich.1992), and *In re Northwest Commons, Inc.*, 136 B.R. 215 (Bankr. E.D.Mo.1991).

*In re Mount Pleasant Limited Partnership*, 144 B.R. at 727, involved two consolidated cases. In the *Mount Pleasant* case, the lender had threatened but never actually required direct rent payments to it. 144 B.R. at 730, 735. In the second case (the *Grand Traverse Resort* case), the lender had served notices of default on the tenants prepetition, which required them to pay rent to the lender. 144 B.R. at 734, 737. Because of the factual distinctions, the court reached opposite results in the two cases. In *Mount Pleasant* since the

rent assignment had not been activated prepetition, the rents were held to be cash collateral and subject to the requirements of § 363. 144 B.R. at 735, 737. In *Grand Traverse Resort* the court held that the debtor lost any interest in the rents under state law due to the prepetition activation of the rent assignment, and thus, as the rents were not property of the estate, the debtor did not have a right to request authority to use them as cash collateral. 144 B.R. at 734.

An identical result was reached in *In re Northwest Commons, Inc.*, 136 B.R. at 215, where the creditor had invoked its rights under the rent assignment before commencement of the bankruptcy case by instructing the debtor's tenants to pay the rent directly to it. 136 B.R. at 217. The court held that the creditor's action prepetition was equivalent to taking possession under state law, and meant that all interest of the debtor in rents was extinguished; the rents could therefore not become property of the estate or cash collateral. 136 B.R. at 220.[6]

Some decisions rejecting Principal's position are *In re Willows of Coventry, Ltd. Partnership*, 154 B.R. 959 (Bankr.N.D.Ind. 1993), and *In re Mews Associates, L.P.*, 144

---

**6.** In order to reach the result urged by Principal this court would have to conclude that under Virginia law the prepetition activation of an assignment of rents permanently deprives a debtor of any claim to the rents. It is as though the rent assignment has a separate existence from the deed of trust on the realty, and the rent sequestration constitutes a separate and final foreclosure of that part of the loan security.

This is one of those types of issues involving state law but which can scarcely arise except in the bankruptcy context. Although I have been able to find no Virginia cases which directly consider the question, I am disinclined to adopt the position of Principal under general principles of Virginia and bankruptcy law.

The loan documents specifically provide that the rent assignment serves as additional collateral for the promissory note and, along with the deed of trust, will be released upon payment of the note. Put another way, the instruments provide that the rent assignment is a security transaction and not an absolute transfer to the creditor. If the debtor found a buyer for the property at a price sufficient to repay the loan, the creditor would have to release the rents.

This analysis is also supported by case law. *See In re Willows of Coventry, Ltd. Partnership*, 154 B.R. 959 (Bankr.N.D.Ind.1993); *In re Mews Associates, L.P.*, 144 B.R. 867 (Bankr.W.D.Mo. 1992); *contra In re Mount Pleasant Limited Partnership*, 144 B.R. 727 (Bankr.W.D.Mich.1992); *In re Northwest Commons, Inc.*, 136 B.R. 215 (Bankr.E.D.Mo.1991).

The court's view is not affected by § 55–220.1 of the Virginia Code which states in relevant part:

The lessee is authorized to pay the assignor until the lessee receives written notification that rents due or to become due have been assigned and that payment is to be made to the assignee. This section shall apply to all instruments of record before, on or after July 1, 1992.

Va.Code Ann. § 55–220.1 (Michie Supp.1993).

Although this section of the Virginia Code arguably supports Principal's position that debtor's interest in the rents was absolutely extinguished prepetition, in my view the adequate protection approach discussed in the text effectively reaches the same result within a superior analytical framework.

B.R. 867 (Bankr.W.D.Mo.1992). These cases rely primarily on the fact that the assignments of rents were provided to the creditors "as additional security" for the underlying indebtedness. As such these courts essentially held that the debtors' interests in the rents, which constituted cash collateral, can be extinguished only by a foreclosure of the rent producing collateral pursuant to state law.

In my view the line of cases cited by Principal reach an ill-advised and unnecessarily absolute position. On the other hand, the cases that tend to support debtor's position are factually or procedurally distinguishable, and they do not fully address the rigorous adequate protection requirement of § 363(e) where the creditor has sequestered the rents prepetition.[7] Accordingly, I find the analysis in both line of cases either incomplete or unpersuasive.

Since the loan documents here provide that the lease and rent assignments are merely collateral security for debtor's note to Principal, I cannot conclude that under Virginia law debtor has forfeited all possible right to the sequestered rents. I must therefore find that the rents do constitute cash collateral under the broad definition of § 363(a). At the same time it seems clear, at least in this case, that the prepetition sequestration imposes a particularly difficult burden on the debtor to establish a right to use the cash collateral by providing adequate protection as required by § 363(e). If all the reasonable and necessary expenses of operating the premises are being paid by the creditor collecting the rent, it is difficult to conceive how a debtor can demonstrate adequate protection in seeking authorization to dissipate cash collateral on expenditures unrelated to maintaining the property.

At hearing the debtor provided the court with little or no evidence on what expenditures it seeks authority to pay from cash collateral. The debtor did not provide the court with a budget to be approved, nor has the debtor raised any contention regarding the manner in which Principal is handling the rents. The debtor seems to assume that if the rents constitute cash collateral it is entitled to use them carte blanche. This is contrary to the provisions of § 363, which state in relevant part that:

(2) The trustee may not use ... cash collateral ... unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use ... in accordance with the provisions of this section.

(3) Any hearing under paragraph (2)(B) ... may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor.... The court shall act promptly on any request for authorization under paragraph (2)(B) of this the subsection.

(4) Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control....

. . . . .

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used ... or proposed to be used ... by the trustee, the court, with or without a hearing, *shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest.*

11 U.S.C. § 363 (emphasis added).

■ Of course, Principal has not consented to the debtor's use of cash collateral

---

7. In *Willows of Coventry* the secured creditor had obtained the appointment of a receiver to collect apartment rents two days before debtor filed bankruptcy; the issue before the bankruptcy court concerned the debtor's motion for turnover pursuant to 11 U.S.C. § 543 rather than a motion to use cash collateral. 154 B.R. at 959–60. *Mews Associates* was before the court on the secured creditor's motion for relief from stay; prepetition, although the creditor had notified some of the building tenants to pay over rents directly to it, no rents had actually been received by the creditor, and the bankruptcy court held that under state law the creditor had not taken possession of the premises. 144 B.R. at 870.

since the creditor's position is that the rents are not even property of the estate. Therefore, the only means by which the debtor would be allowed to use cash collateral is with this court's authorization under § 363(c) which requires a finding of adequate protection under § 363(e).

■ In a typical cash collateral hearing the debtor presents a budget of what it believes are reasonable operating expenses and seeks court approval of that budget. Adequate protection is typically established by the fact that the cash is being used to maintain and enhance the value of the underlying income producing real property in which the creditor also usually holds a security interest. Other factors are also considered such as whether or not there is equity in the property, whether the property is declining in value, and whether or not postpetition payments due the creditor are current.

■ The most fundamental factors are simply not present here. The debtor has not presented a budget, and the operating expenses are already being paid by the creditor. At hearing the debtor did not even state why it seeks authority to use cash collateral. The court can only surmise that the debtor seeks authorization to use cash collateral to pay its attorney fees or to make mortgage payments on the second deed of trust. Since the court has already ruled that the subject property is not necessary to an effective reorganization under § 362(d)(2)(B), there would be no basis for this court to find adequate protection, even considering the "equities of the case" pursuant to 11 U.S.C. § 552(b), to authorize the debtor to use Principal's cash collateral to pay the debtor's lawyers or the

second mortgage holder absent a showing that Principal is "demonstrably" oversecured. *See e.g., In re 680 Fifth Avenue Associates,* 154 B.R. 38 (Bankr.S.D.N.Y. 1993).[8]

In this case there is an equity cushion over Principal's deed of trust balance of approximately 12% based on the court's findings in its ruling on Principal's motion for relief from stay. In my view, the 12% equity cushion falls far short of establishing that Principal is demonstrably oversecured. Case law has almost uniformly held that an equity cushion under 11% is insufficient to constitute adequate protection, and case law is at best divided on whether an equity cushion of 12% to 20% constitutes adequate protection. *See Kost v. First Interstate Bank of Greybull (In re Kost),* 102 B.R. 829 (D.Wyo.1989) (citations omitted); *see also Equitable Life Assurance Society of the United States v. James River Associates (In re James River Associates),* 148 B.R. 790, 796 (E.D.Va.1992) (citing *In re Kost*); 1 David G. Epstein, *et. al.,* Bankruptcy § 3–27(c) (1992) (citing *In re Kost*).

■ An equity cushion does not always respond to or answer fully the whole range of risks to the value of the creditor's encumbrance. *See* 1 David G. Epstein, *et al.,* Bankruptcy § 3–27(c) (1992). Uncertainty can falsely inflate the equity cushion, and time will usually deflate it. *See* 1 David G. Epstein, *et al.,* Bankruptcy § 3–27(c) (1992). Here there is substantial uncertainty at to whether Time–Life, the tenant occupying 90% of the premises, will renew its lease when it expires in 1996. Although this critical date is still three years hence, it is important to note that Time–Life is also

---

**8.** The court notes two recent decisions that have specifically addressed the issue of paying debtor's attorney fees from cash collateral. *Shaw, Licitra, Parente, Esernio & Schwartz, P.C. v. Travelers Indemnity Company (In re Grant Associates),* 154 B.R. 836 (S.D.N.Y.1993); *In re Westwood Plaza Apartments, Ltd.,* 154 B.R. 916 (Bankr.E.D.Tex.1993). Both cases hold that a debtor must satisfy the requirements of 11 U.S.C. § 506(c) before being permitted to pay its

attorney fees out of cash collateral. *In re Grant Associates,* 154 B.R. 836; *In re Westwood Plaza Apartments, Ltd.,* 154 B.R. 916. In both cases the court found that the debtor failed to show that paying the proposed fees from cash collateral provided "any benefit" to the secured creditor as required by § 506(c). *In re Grant Associates,* 154 B.R. 836; *In re Westwood Plaza Apartments, Ltd.,* 154 B.R. 916.

a 50% partner of the debtor, and its non-cooperation is why this case had to be filed as an involuntary bankruptcy petition. Accordingly, it is not unreasonable to conclude that this property is declining in value as 1996 approaches without Time–Life renewing its lease.[9]

Moreover, payment of debtor's attorney fees would likely be antithetic to Principal's interest, and the court can see no benefit to Principal by the debtor dispersing Principal's cash collateral to the second deed of trust holder. The debtor has not cited any authority to support such a proposition. Accordingly, the court rules that debtor's motion for use of cash collateral must be denied for failure of debtor to satisfy the requirements of § 363(c) & (e). The court's denial of the motion on this basis is in addition to my bench ruling denying the motion at the conclusion of the hearing pursuant to § 362(d) with the granting of Principal's motion for relief from stay. To complete the circle, the denial of debtor's cash collateral motion pursuant to § 363(c) & (e) provides an additional basis to support the court's conclusion that debtor's office building is not necessary to an effective reorganization.

A separate order has been entered.

---

**9.** Although the court would normally consider that the fact that postpetition payments to Principal are current, I believe the unique circumstances discussed in the text substantially discount this fact in the adequate protection analysis.

The court has already granted relief from stay based in part on the debtor's proven inability to obtain refinancing sufficient to pay Principal's claim. This fact combined with the prepetition sequestration of rents and the dubious value of the underlying collateral, lead the court to conclude that the postpetition payments being made from the current rent stream provides little reassurance to Principal's position and should not be given any significant consideration by the court.