In re **LDN CORPORATION.**

**NATIONSBANK, N.A., Plaintiff,**

v.

**LDN CORPORATION, Defendant.**

**Bankruptcy No. 95–41257.**

United States Bankruptcy Court,
E.D. Virginia,
Newport News Division.

Jan. 2, 1996.

Frank J. Santoro, Portsmouth, VA, for debtor.

Thomas E. Cabaniss, Norfolk, VA, for plaintiff.

## MEMORANDUM OPINION AND ORDER

DAVID H. ADAMS, Bankruptcy Judge.

This matter comes before the Court on NationsBank's Motion For Relief From Stay and LDN Corporation's Motion to Use Cash Collateral. An evidentiary hearing was held on both motions on November 22, 1995. The parties have subsequently submitted briefs and reply briefs.

### FACTUAL BACKGROUND

LDN Corporation ("LDN") is the owner and operator of the Quality Inn Downtown, a 115 room motel located in the Williamsburg area. LDN filed a voluntary petition for relief under Chapter 11 on June 21, 1995 and filed its plan of reorganization on November 21, 1995. Lakis Florakis is the President of LDN and has managed the motel full time since October of 1994, drawing a $600.00 weekly salary for those duties.

NationsBank is a secured lender with a total indebtedness owed to it as of the petition date of $3,512,462.00.[1] The loans are secured by a Deed of Trust on the motel

---

1. LDN is obligated to the Bank under three separate promissory notes, all dated December 9, 1991. For purposes of this decision, the exact amount owed under each individual note is not relevant. The amount of the debt is not disputed by the debtor.

property, an Assignment of Leases, Rents, and Profits, and a Security Agreement, all dated December 9, 1991. There is no dispute as to the validity and perfection of these liens. The debtor has failed to make prepetition mortgage payments to NationsBank during 1994 and for the first six months of 1995. *Transcript,* p. 56. Based on its own financial projections, it will also be impossible for the debtor to make postpetition mortgage payments during the winter months of 1995 and early 1996.

The parties have stipulated that the rents constitute cash collateral pursuant to 11 U.S.C. § 363(a). A consent Cash Collateral Order was entered by the Court on August 9, 1995 (the "Order") granting the debtor the authority to use cash collateral from the date of the petition through October 31, 1995. Thereafter, the debtor has had no authority to use cash collateral except to the extent that NationsBank authorized the use of $8,500.00 in November solely to meet payroll expenses on November 16, 1995. At the conclusion of the hearing, the Court authorized the debtor to only use cash collateral to pay actual and necessary expenses pending a ruling by the Court on the subject motions. The same restrictions as contained in the Order were to continue in effect until the Court rendered its decision.

Pursuant to the terms of the Order, a Cash Collateral Account was established at NationsBank. The bank has a first lien on this account to secure the Notes, and as of November 20, 1995, the Cash Collateral Account contained a balance of $111,832.00. The day before the hearing, the debtor deposited an additional $20,000.00 into this account. Pursuant to the terms of the Order and otherwise, the debtor had remitted a total of $100,000.00 to NationsBank as of November 21, 1995.

The parties have stipulated that there is no equity for the debtor in the real property, personal property, rents, or cash collateral account. At the hearing, NationsBank called Robert White of Hospitality Appraisals who testified that in his opinion, the fair market value of the property as of July, 1994 was $2,150,000.00. The only evidence of value offered by the debtor was the testimony of Mr. Florakis that the property would sell at auction for somewhere between $1,500,000.00 and $1,600,000.00. The debtor's bankruptcy schedules list the tax assessed value of the property at $2,760,000.00. The recently filed plan of reorganization values the property at $2,000,000.00.

## CONCLUSIONS OF LAW

NationsBank argues that Relief From Stay should be granted under sections 362(d)(1), 362(d)(2), and 362(d)(3) of the Bankruptcy Code. We consider the arguments relative to those sections *seriatim.*

### 11 U.S.C. § 362(d)(1)

Section 362(d)(1) provides that relief from stay shall be granted for cause, including, but not limited to, lack of adequate protection of the creditor's interest in the debtor's property. Courts have discretion to lift the stay and must determine whether relief is appropriate on a case by case basis. *Robbins v. Robbins (In re Robbins),* 964 F.2d 342, 345 (4th Cir.1992). NationsBank argues that cause exists because the Order was violated when LDN paid Mr. Florakis a $3,000.00 per month management fee for the months of July through October, 1995. The testimony of Mr. Florakis indicates that he knew payment of the management fee was in violation of the Order. *Transcript* pp. 39–40. At the time of the hearing, $3,000.00 had been repaid to NationsBank. The Brief submitted by debtor's counsel indicates that a check for the remaining $9,000.00 was tendered to NationsBank on December 1, 1995. The Court is very troubled by the knowing violation of the Order by Mr. Florakis and does not consider this as merely a technical problem, as the debtor would have us characterize it. The debtor argues that the violation of the Order does not constitute "cause" in this case because the secured creditor suffered no harm from the prohibited act. This "no harm, no foul" approach to this Court's orders in unacceptable. We do take note of the fact that the money has been refunded and we do not reach the issue of granting relief under 11 U.S.C. § 362(d)(1) on this basis alone.

■ Cause may exist by the failure of the debtor to pay its secured creditor for a substantial period of time, whether prepetition or postpetition, coupled with a substantially unsupported proposal to satisfy the secured debt after plan confirmation. *CMF Loudoun Ltd. Partnership v. Nattchase Assoc. Ltd. Partnership (In re Nattchase Assoc. Ltd. Partnership)* 178 B.R. 409, 417–418 (Bankr.E.D.Va.1994). Substantial prepetition arrearages exist in the present case and the proposal to pay the secured debt is unsupported as the financial projections of the debtor are questionable at best. Furthermore, the violation of the Court's order in conjunction with the recent payment history on the NationsBank loan constitutes cause to grant relief from stay. *Equitable Life Assurance Society of the United States v. James River Assoc. (In re James River Assoc.),* 148 B.R. 790, 797 (E.D.Va.1992); *Kessler v. Merrill Lynch Mortgage Corp. (In re Kessler),* 76 B.R. 434 (Bankr.E.D.Pa.1987). *James River Associates* was discussed in the briefs of both parties and this Court views the reasoning of that decision as instructive in the case before us. In *James River,* the District Court upheld the Bankruptcy Court's determination that the stay be lifted pursuant to 362(d)(1). The court found that both independently and together, several factors constituted a lack of adequate protection. These factors were a diminishing equity cushion (here we have none), delinquent real estate taxes (which can only be paid from the cash collateral), lack of payments on the note (for a period of at least 18 months), and a deterioration of the creditor's security position under a priming lien. *Id.* at 797. In *James River* the debtor had not made payments for 17 months, 7 of which were postpetition. *Id.* at 797. The debtor contends that the facts in *James River* were more egregious than in the present case. We disagree. The problems of LDN may be somewhat different from those of the debtor in *James River,* but they are equally serious problems and the combination of these several factors weigh heavily against the debtor's position. Most noteworthy are the significant prepetition arrearages and the fact that the debtor cannot make postpetition payments except from NationsBank's collateral.

It is also striking that the debtor expended $287,000.00 for capital improvements in 1994 and still did not pay NationsBank the net operating revenues in that year of approximately $64,000.00. The debtor's president did not provide the Court with any reason as to why the net funds were not paid to the secured lender. Furthermore, real estate taxes and insurance premiums can only be paid because of the cash collateral account. When considered in conjunction with the violation of the Order, cause to lift the stay is evident.

NationsBank also asserts that adequate protection does not exist because LDN will suffer negative cash flows of at least $83,690.00 through March of 1996. The debtor has no means to make adequate protection or regular monthly mortgage payments, other than through the utilization of the bank's own collateral. The debtor wants to use the cash collateral to make adequate protection payments and to fund operating expenses during this period of negative cash flows. This subjects the secured creditor to an impermissible form of double jeopardy. The bank's secured loan balance can only be reduced by the diminution of its collateral. This situation defies the definition of adequate protection.

The debtor cites *Robbins* for the proposition that in deciding whether to lift the stay, the court should balance the potential prejudice to the debtor's estate against the hardship of denying the relief to the entity seeking to have the stay lifted. *In re Robbins,* 964 F.2d at 345. The potential prejudice to the debtor in this case is obvious, the loss of its business. On the other hand, the potential prejudice to NationsBank is enormous if LDN is permitted to use up a significant portion of the cash collateral without any adequate protection being provided. That is an untenable position in which to place a secured lender.

Consequently, considering all the relevant factors, cause exists to grant relief from stay.

**11 U.S.C. § 362(d)(2)**

■ Relief from stay shall be granted pursuant to 11 U.S.C. § 362(d)(2) if there is

no equity in the property and the property is not necessary for an effective reorganization. The parties have stipulated that there is no equity in either the real property or the personal property. The Court made a preliminary finding at the hearing that the property is necessary for an effective reorganization. The basis for that finding is that this is a single asset real estate case. The Court however, reserved the right to consider whether or not a reorganization is possible in a reasonable period of time. We now address that issue.

"[T]he property [must be] essential for an effective reorganization that is in prospect. This means ... that there must be a reasonable possibility of a successful reorganization within a reasonable time." *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 375–376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988). This Court has stated that the debtor "need only show that there is a reasonable probability that it will be able to propose a plan that will result in successful reorganization." *In re Nattchase Assoc. L.P.,* 178 B.R. 409, 417 (Bankr.E.D.Va.1994). In the context of relief from stay litigation, the analysis of the potential for a successful reorganization is not the same as the standard employed at a confirmation hearing. *Steele v. Cho (In re Cho),* 164 B.R. 730, 733 (Bankr. E.D.Va.1994). However, consideration of 11 U.S.C. § 1129 does provide guidance as to the feasibility of the plan. *Id.* at 733. "If the plan proposed cannot meet confirmation standards, it cannot form the basis for finding there to be a reasonable possibility of a successful reorganization as required by 11 U.S.C. § 362(d)(2)." *Id.* at 733. It is intimated in the cases that the evidentiary burden on the debtor increases with the passage of time. *Id.* at 733 (citing *Timbers,* 484 U.S. at 376, 108 S.Ct. at 633). In this case, the exclusivity period expired in October and we note that the hearing on the Disclosure Statement is set for January 12, 1996.

NationsBank contends that the plan filed by LDN is not in prospect because it cannot be confirmed and cannot be amended to cure its defects. First of all, NationsBank argues that the plan violates 11 U.S.C. § 1129(a)(11) because it is not feasible. The specific reason for this flaw, according to the bank, is that the annual debt service under the plan will be approximately $220,000.00 while the debtor's projected annual cash flow for 1995–1996 will be only approximately $232,000.00. According to the bank, the current terms of the plan provide too slim a margin to provide a basis for confirmation. It is also contended that the debtor's financial projections are inaccurate and unreliable. The Court has to conclude that the projections are unrealistic based on the evidence presented. If the plan were amended, NationsBank contends that the interest component on the annual debt service would have to be at least $251,551.00 in order for the plan to be confirmable under section 1129(b).

In response to questions from counsel for NationsBank, the debtor's representative suggested that its future profitability would be realized through *anticipated* increased annual revenues of 2% to 3% and *expected* reductions of costs in the sales of food and beverages which are totally unsupported by any evidence.[2] They are the naked hopes of the debtor, offered without any plausible explanation of how such results can be achieved. The Court is aware that its inquiry concerning the proposed plan at this point in the case is at a lesser level than that required under § 1129 for confirmation purposes. *In re Nattchase,* 178 B.R. at 417. However, even under this lesser standard, the Court's conclusion is that an effective reorganization is not reasonably in prospect.

LDN responds that the motel depends heavily on tourism which is a seasonal business, thus negative cash flows are not an adequate protection issue, but rather a fact of life during the winter months. The Court recognizes that seasonally declining cash flows are a potential problem for any busi-

---

**2.** The budget attached to the Disclosure Statement as Exhibit G lists Food & Beverage Revenue for 1995 at $6,319.00 and expenses at $37,302.00 For 1996. Food & Beverage revenue is projected to be $15,000.00 and expenses related thereto are to be reduced to $12,000.00. No explanation at all was tendered as to how revenue would rise so dramatically and expenses drop so precipitously in one year's time.

ness that depends heavily on tourism. However, serious doubt exists as to whether LDN may potentially reorganize and become a viable year round entity and the debtor has not provided the Court with evidence of an ability to reorganize its financial affairs in the foreseeable future.

## 11 U.S.C. § 362(d)(3)

Finally, NationsBank argues that the stay should be lifted pursuant to 11 U.S.C. § 362(d)(3). This section was added to the Code as part of the Bankruptcy Reform Act of 1994. The parties do not argue that the property is not within the meaning of this section and we therefore need not address the definitional issue as have some courts in the early analysis of the 1994 amendment to the law. There is also no dispute that LDN filed its plan later than 90 days after it had filed its petition.

 We note at the outset that there is scant legislative history and case law on this section. In enacting the statute, Congress was apparently concerned about the delay in the bankruptcy process and the resulting unfairness to secured lenders when single asset real estate projects were involved. As stated in the Senate Report, "[t]his amendment will ensure that the automatic stay provision is not abused, while giving the debtor the opportunity to create a workable plan of reorganization". S.Rep. No. 168, 103rd Cong., 1st Sess. (1993). In enacting the amendments relative to single asset real estate cases, Congress has provided for extraordinary expedition. Congress was motivated by a desire to afford relief in situations where (1) the owner of an encumbered building is attempting to avoid the loss of the building to a grossly undersecured lender and (2) there is no real hope that a viable and confirmable plan can be produced. *In re Kkemko, Inc.,* 181 B.R. 47, 51 (Bankr. S.D.Ohio 1995).

Representative Brooks, Chairman of the House Judiciary Committee, stated that "[w]ithout bankruptcy reform, companies, creditors, and debtors alike will continue to be placed on endless hold until their rights and obligations are adjudicated under the present system—and that slows down new ventures, new extensions of credit, and new investments". 140 Cong.Rec. 10,764 (1994). Congressman Brooks went on to say that "[w]e have been very careful in striking a balance between creditors and debtors in the legislation". 140 Cong.Rec. 10,764 (1994). Although the comments of Congressman Brooks were about the bill as a whole, there is no doubt that section 362(d)(3) in particular addresses the concern that debtors with little of hope of successfully reorganizing delay the bankruptcy process while secured creditors are left helplessly on the sidelines.

Congress expressly attempted to avoid the usual delays experienced in Chapter 11 in single asset real estate cases, which historically have been filed to avoid a foreclosure and in the hope that the debtor can come up with some form of a miracle in order to formulate an acceptable plan. Congress was persuaded that such delays in single asset real estate cases are unwarranted and it passed the amendment to Section 362 in 1994 to provide a means to expedite the potential for relief, unless certain conditions are met. The unequivocal language of the statute mandates relief from stay in such cases. 11 U.S.C. § 362(d)(3) provides in relevant part:

(d) On request of a party in interest and after notice and a hearing, the court **shall grant relief** . . .

(3) with respect to a stay of an act against single asset real estate . . . by a creditor . . . **unless,** not later than the date that is 90 days after the entry of the order for relief . . . (or such later date as the court may determine for cause by order entered within that 90–day period)—

(A) the debtor has **filed** a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; **or**

(B) the debtor has **commenced** monthly payments to each creditor whose claim is secured by such real estate . . . which payments are in an amount equal to interest at a current fair market rate on the value of the creditor's interest in the real estate. (Emphasis added).

See *Collier on Bankruptcy,* ¶ 362.07 (15th ed. 1995).

The language of § 362(d)(3) is unambiguous. Congress was persuaded to give a secured creditor quick relief in a single asset case when the debtor fails to promptly file a plan or make early interest payments to the creditor secured by the real estate. This Court can find no other implication from the language of the amended statute; it was enacted to assist secured creditors in single asset real estate cases. See *In re Midway Investments, Ltd.,* 187 B.R. 382, 388 (Bankr. S.D.Fla.1995); *Kkemko, supra* at page 51.

LDN did not file a plan until two months after the deadline established by 362(d)(3) and it failed to request a timely extension of the 90 day period. The debtor also failed to commence interest payments during the same period in order to invoke the alternative method of avoiding relief under § 362(d)(3). The debtor would have the Court find that the adequate protection payments made to NationsBank should also be considered interest payments for the purposes of § 362(d)(3). If that were the case, then the purposes behind this new section would be undermined, particularly under the facts before the Court. LDN has already delayed the case beyond the time period contemplated by the amendments and now seeks to say that it was making interest payments in the guise of adequate protection payments that it was required to make under the Order. If the Court permitted the prior adequate protection payments of LDN to count towards the § 362(d)(3) interest payments, it would encourage the delay the statute was meant to prevent; LDN would simply be using NationsBank's own collateral to prolong the inevitable. That does not further the purposes of the 1994 amendments to the Code and therefore the Court need not reach the issues of what rate of interest is required and what value that interest rate should be based upon.

The Court views relief under § 362(d)(3) to be mandatory where its provisions are not strictly complied with. Therefore, relief in favor of NationsBank is proper under § 362(d)(3).

**Motion to Use Cash Collateral**

In a typical cash collateral hearing, adequate protection is established by the fact that the cash is going toward the maintenance and enhancement of the value of the property in which the creditor holds a security interest. *Principal Mutual Life Insurance Co. v. Atrium Dev. Co. (In re Atrium Dev. Co.),* 159 B.R. 464, 471 (Bankr.E.D.Va. 1993). That is not the case here. It was stated at the hearing that the reasons for keeping the property open during the winter months were that it was more expensive to close the hotel for the Winter and reopen in the Spring and further that the franchise agreement required it to remain open on a year round basis. The use of cash collateral at this point by the debtor would do very little for the maintenance of the property and the enhancement of its value.

The creditor is woefully undersecured, and the debtor has no prospects of replenishing any of the cash collateral until late in 1996. It appears from evidence adduced at the hearing that the debtor's only significant cash assets consist of the Cash Collateral Account.[3] It is also of great concern that the debtor has not used net operating income in the past to pay debt service to the bank, and the Court has little assurance that the debtor will do so even while under the watchful eye of the Court in the Chapter 11 proceedings. We also note that authorizing the use of cash collateral at this point would be inconsistent with the decision to grant relief from stay to NationsBank. See 11 U.S.C. § 363(d); *In re Atrium Dev. Co.* 159 B.R. at 467, n. 2. We have found that a reorganization is not in prospect and simply using up the collateral of NationsBank is not acceptable.

Consequently, the Court denies the debtor's Motion to Further Use Cash Collateral pursuant to 11 U.S.C. § 363(c)(2).

### CONCLUSION

For the foregoing reasons, NationsBank's Motion for Relief From Stay is hereby

---

**3.** On the Petition date, the debtor listed on its schedules $1,000.00 in cash, $100.00 in a bank account and $4,333.60 in accounts receivable.

Testimony at the hearing did not reveal any other significant cash assets.

GRANTED and LDN's Motion to Use Cash Collateral is hereby **DENIED.**

It is so **ORDERED.**