## In re DOUG WILSON INSURANCE AGENCY, INC.

### No. 4:13–bk–11937.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

July 16, 2013.

James H. Penick, III, Eichenbaum Law Firm, Little Rock, AR, for Debtor.

### ORDER

JAMES G. MIXON, Bankruptcy Judge.

On April 1, 2013, Doug Wilson Insurance Agency, Inc. (Debtor) filed a voluntary petition for relief under the provisions of Chapter 11 of the United States Bankruptcy Code. On April 2, 2013, First Security Bank (First Security) filed a motion for relief from the automatic stay concerning a tract of real property located in White County, Arkansas, and a tract of real property located in Lonoke County, Arkansas. After a hearing in Little Rock, Arkansas, on May 1, 2013, the Court granted relief from the stay as to the White County property and took under advisement the motion for relief from the stay as to the Lonoke County property. At the request of the Court, both sides filed briefs. The proceeding before the Court is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and the Court may issue a final Order in this case.

### I.

### DISCUSSION

11 U.S.C. § 362(a) operates as a stay against all entities of, among other things, "any act to create, perfect or enforce any lien against property of the estate." 11 U.S.C. § 362(d) provides as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such

as by terminating, annulling, modifying, or conditioning such stay—

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>> (A) the debtor does not have an equity in such property; and
>>
>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(g) allocates the burden of proof in any hearing on the motion for relief from stay. This section provides:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
>
>> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>>
>> (2) the party opposing such relief has the burden of proof on all other issues.

See also 3 Collier on Bankruptcy ¶ 362.10 (Alan N. Resnick & Henry J. Sommer, et al. eds., 16th ed.)

First Security alleges that the Debtor was in default as of April 2, 2013, on the repayment of two notes secured by mortgages on the Lonoke County property. The real property in question is referred to as the unfinished rent house and the other property as the strip mall. The first note (note 9422) is dated September 11, 2009, and is in the original principal sum of $150,000.00. (FSB Ex. 1 & 6.) The note bears interest at the rate of 6.75% per annum on the unpaid principal balance. The note is to be repaid in one payment of principal and interest on September 11, 2010. As of April 29, 2013, the amount designated as "current payoff amount" is $193,520.20. (FSB Ex. 6.) The second note (note 5076) dated May 4, 2006, is in the original principal sum of $495,000.00. (FSB Ex. 7 & 9.) The note bears interest at the rate of 8.25% per annum on the unpaid principal balance. The note was due to be repaid in one payment of principal and interest on May 4, 2007. As of April 29, 2013, the outstanding principal balance is $473,840.06 plus interest of $75,568.23 and late fees of $4,750.00. (Tr. at 34 & FSB Ex. 9.) The total owed on note 5076 as of April 29, 2013 is, therefore, $554,158.29. The total debt to First Security secured by the strip mall and the unfinished rent house is $747,678.49 not including interest since April 29, 2013, plus the attorney's fees and costs.

Although the Debtor's schedules reflect that First Security possesses a mortgage lien on the property described as the strip center and the unfinished rent house as collateral to secure the indebtedness owed on both notes described herein, First Security failed to introduce the mortgage as evidence in its motion for relief from the stay. However, since the Debtor's schedules do not dispute that First Security has a mortgage lien on the strip center and the unfinished rent house to secure both notes nor does the Debtor argue that no mortgage exists, the schedules will be deemed as an admission against interest and therefore sufficient proof of the existing mortgage. (FSB Ex. 10.)

The Debtor owes a total of $747,678.49 secured by the unfinished rent house and the strip mall valued in Debtor's schedules as $829,000.00.[1] This calculates into an equity cushion of $81,321.51 as of April 29,

---

1. Schedule A only has the value of the strip mall listed as $729,000.00 and does not list the unfinished rent house. The unfinished rent house is found listed on Schedule D with a value of $100,000.00. (FSB Ex. 10.)

2013, although neither party introduced any appraisal testimony. The bank's records indicate that since the Debtor stopped making payments interest has accrued in the sum of $71,145.72 on one note and $36,565.10 on the other note. (FSB Ex. 6 & 9.) No payments on the indebtedness to First Security have been made in over two years. (Tr. at 28.)

First Security alleges that the Debtor assigned First Security all leases, rents and profits due and owing by the Debtor generated by the use of the strip mall and, therefore, when the note became in default for non payment, First Security became entitled to collect all rents and profits from any tenants of the property to be applied to the note. Therefore, the Bank argues the rents are unavailable to the Debtor for use in its Chapter 11 case. Whatever rents and profits which have been generated by the strip mall have not been paid on the bank's indebtedness since litigation began in 2011 between First Security and the Debtor.[2]

The Debtor's schedules show no business activity generating income except rent from the strip mall and a rent house subject to a mortgage in favor of Metropolitan Bank. The Debtor has not paid real estate taxes on the strip mall in more than three years. The Debtor estimates the unpaid taxes to be $14,000.00, although no tax debt is listed on the petition or schedules. (Tr. at 129.) The Debtor failed to insure the strip mall so First Security was required to obtain insurance. (Tr. at 82.) The Debtor claims $2,000.00 a month income from the strip mall, $825.00 per month from the rent house and no income from the unfinished rent house. (Tr. at 83.) The Debtor's President, Doug Wilson (Wilson), occupies one of the units in the strip mall but pays no rent to the Debtor. The Debtor does not have First Security's permission to use its cash collateral and has failed to file a motion under Section 363(c)(2)(B) for authority to use cash collateral as of the date of this Order. Wilson testified that he has not used any of the rent proceeds for personal use since the case was filed. (Tr. at 106.) Although the corporation claims to have a contractor's license, the schedules reflect no personal property of any kind with which to engage in the construction business. (Tr. at 130.)

The Debtor's schedules are not correct. The Debtor failed to schedule a cause of action on Schedule B now pending in state court against First Security and the unpaid property taxes are not scheduled. The rent home is not reflected as an asset on Schedule A and until it was brought to the Debtor's attention at the hearing, the schedule of unexpired leases was not correct. The Debtor reflects income of $19,750.00 since January 1, 2013, but none of the income was paid on the debt owed to First Security.

Although the Debtor's evidence demonstrates an equity cushion of $81,321.51 as of April 29, 2013, the Debtor, by engaging First Security in litigation for more than two years without making payments of any kind on the note has caused the equity cushion to diminish as it continues to diminish each day with the accrual of interest. According to First Security's records, interest on the two notes accrues at the rate of $209.52 per day. (FSB Ex. 6 & 9.)

■ One of the legal issues raised at the trial was whether the assignment of rents made by the Debtor to First Security was absolute or for security purposes in light

2. Doug Wilson testified when asked what had happened to the rents, "[p]art of the money goes to me, part of it goes for expenses, part goes to me for managing the properties, doing repairs, whatever I have to do with them." (Tr. at 84.)

of Judge Morris Arnold's opinion in *First Fed. Sav. of Ark., F.A. v. City Nat'l Bank of Fort Smith, Ark.,* 87 B.R. 565 (W.D.Ark. 1988). The question is, does the Debtor have any interest in the rents from which it could fund a Chapter 11 plan or have they been irrevocably assigned to First Security.

However, this Court pointed out in the case of *In re Byram Rentals, Inc.,* 410 B.R. 620 (Bankr.W.D.Ark.2009):

> At the very least, post-petition rents were assigned pre-petition and ... constitute cash collateral under 11 U.S.C. § 363(c)(2) which the Debtor may not use without the secured parties' consent or by order of this Court after notice and a hearing.

Section 362(d)(1) provides that relief from the automatic stay shall be granted for cause, including but not limited to, lack of adequate protection of the creditor's interest in the debtor's interest in property. 3 Collier on Bankr.¶ 262.07[3] (Alan N. Resnick & Henry J. Sommer et al. eds., 16th ed.). Lack of any realistic prospect for reorganization mandates relief under section 362(b)(2). See 3 Collier on Bankr. ¶ 362.07[4][b](Alan N. Resnick & Henry J. Sommer et al. eds., 16th ed.).

■ In this case, the Debtor seems more focused on delaying First Security and in pursuing its litigation than proposing a plan of reorganization. The Debtor waited two years after First Security commenced foreclosure to file for relief under Chapter 11 and in the interim did nothing to prepare for reorganization. The only exhibit the Debtor put forth toward developing a plan was Debtor's Exhibit 9 which was styled "Projected incomes and expenses." The projection combined income and expenses from the post office property located in White County, Arkansas, the unfinished rent house, another rent house subject to a mortgage in favor of Metropolitan Bank, and the strip mall.[3] The Debtor's projection does not address the unpaid taxes and does not address what amount of debt service is required to amortize First Security's debt. This exhibit shows income from the rent house but doesn't account for debt service on a mortgage in favor of Metropolitan Bank which encumbers the property. The projection is a one page document prepared the week of the hearing, suggesting a hasty preparation. (Tr. at 123.) Not only are there substantial unpaid pre-petition arrearages, the Debtor's projections of future income is unsubstantiated and insufficient to adequately service First Security's secured claim. Neither the Debtor's Exhibit 9 nor Wilson's testimony is entitled to much credibility because it is apparent that very little effort to substantiate the projections was demonstrated.[4] See *In re City Loft Hotel, LLC,* 465 B.R. 428 (Bankr. D.S.C.2012). As stated in *NationsBank, N.A. v. LDN Corp. (In re LDN Corp.),* 191 B.R. 320 (Bankr.E.D.Va.1996):

> [c]ause may exist by the failure of the debtor to pay its secured creditor for a substantial period of time, whether prepetition or postpetition, coupled with a substantially unsupported proposal to satisfy the secured debt after plan confirmation.

The Debtor has failed to show any reasonable possibility that a plan of reorgani-

---

**3.** The post office has already been determined to not be property of the estate and is subject to a pending foreclosure action in state court

**4.** The Debtor is negotiating with a business called Anytime Fitness to lease one of the empty spaces in the strip mall but they have not yet reached an agreement. (Tr. at 114–123.) The rent from the prospective tenant is included in the projections the Debtor makes in Debtor's Exhibit 9.

zation can be confirmed. The evidence establishes that First Security has for the reasons stated herein established cause under 11 U.S.C. § 362(d) for granting relief from the automatic stay; therefore, it is unnecessary to decide the assignment of rents issue.

For the reasons stated in open Court on May 1, 2013, the Court's Order of May 8, 2013, and this Order, the motion for relief from the automatic stay as to the Debtor's real property in White County, Arkansas, and the Debtor's real property located in Lonoke County, Arkansas, described as the unfinished rent house and the strip mall is granted and the property is abandoned from the estate.

IT IS SO ORDERED.